Steven B. Andersen, ISB # 2618
**KIRTON AND MCCONKIE**
999 W. Main Street, Ste. 100
Boise, Idaho 83702
Telephone: (208) 370-3325
E-mail: sandersen@kmclaw.com

Thomas C. Perry, ISB # 7203
**J.R. SIMPLOT COMPANY**
1099 W. Front Street
Boise, Idaho 83707
Telephone: (208) 780-7430
E-mail: thomas.perry@simplot.com

Stephen J. Odell, OSB # 903530 (Application for Admission *Pro Hac Vice* pending)
**MARTEN LAW, PLLC**
1050 SW Sixth Ave., Ste. 2150
Portland, Oregon 97204
Telephone: (503) 241-2648
E-mail: sodell@martenlaw.com

*Attorneys for Applicant for Intervention J.R. Simplot Company*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION, | ) ) ) | Case No.:  20-cv-00553-BLW |
| Plaintiff, | ) ) | **APPLICANT J.R. SIMPLOT** |
| CASEY HAMMOND, Principal Deputy Assistant Secretary for Land and Minerals Management; UNITED STATES DEPARTMENT OF THE INTERIOR; and UNITED STATES BUREAU OF OF LAND MANAGEMENT, | ) ) ) ) ) ) ) | **COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AS OF RIGHT OR, IN THE ALTERNATIVE, BY PERMISSION OF THE COURT** |
| Defendants, | ) ) | |
| and | ) ) | |
| J.R. SIMPLOT COMPANY | ) ) | |
| Applicant for Intervention. | ) ) | |

## **INTRODUCTION**

Applicant-for-Intervention J.R. Simplot Company ("Simplot") has significant protectable

interests at stake in this matter and indeed, is in many respects the principal real party-in-interest.

Page 1 - APPLICANT J.R. SIMPLOT CO.'S MEMO IN SUPP. OF MOT. TO INTERVENE

Not only is it one of the parties to the Blackrock Land Exchange ("2020 Exchange")[1] challenged in this case, the lands Simplot has acquired pursuant to the exchange are critical to the company's ability to both meet its ongoing environmental obligations and ensure the long-term viability of the Don Plant that it has operated now for more than seven decades. The plant's continued operation is also vitally important both to the local community for the substantial amount of jobs and economic support it provides, as well as to American agriculture given that the plant is a key domestic supplier of phosphate nutrients and fertilizers.

Nor can Federal Defendants adequately represent or protect Simplot's interests. As an initial matter, the overwhelming majority of environmental effects this Court ruled warranted a more detailed analysis under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, in reviewing the previous iteration of the land exchange ("2007 Exchange") relate to prospective future actions Simplot will take on exchange lands it has acquired. Moreover, Simplot took several concrete and meaningful actions in direct response to this Court's earlier decision that are reflected in the improved 2020 Exchange challenged in the current action. As such, Simplot is uniquely positioned to shed valuable light on many of the key issues underlying the effects of its anticipated actions that are analyzed in the Environmental Impact Statement ("EIS") this Court ordered Defendant Bureau of Land Management ("BLM") to prepare.

---

[1] Simplot refers to the land exchange Federal Defendants approved in August 2020 that is subject to review in the present case as the 2020 Exchange to distinguish it from the previous version approved in 2007 that this Court set aside based on its ruling that it required the preparation of an environmental impact statement in order to comply with NEPA. Shoshone-Bannock Tribes v. United States Dep't of the Interior, No. 4:10-cv-004-BLW, 2011 WL 1743656 (D. Id. May 3, 2011) ("Blackrock I"). As described in this memorandum, the 2020 Exchange differs in several substantial respects from the 2007 Exchange that are projected to reduce the environmental and cultural effects of the reasonably foreseeable actions Simplot plans to take moving forward.

Simplot is also seeking intervention in a timely fashion insofar as Federal Defendants have not yet responded to the Complaint, no substantive motions have been filed, and no litigation schedule has been set.  Therefore, and as explained more fully below, Simplot meets the necessary criteria to intervene under both Federal Rule of Civil Procedure 24(a) and (b), and respectfully submits that this Court should therefore grant its motion and rule that Simplot is entitled to intervene as of right or, in the alternative, grant it permission to do so.

## FACTUAL BACKGROUND

The Blackrock Land Exchange has been in the making and subject to multiple rounds and myriad layers of analysis for more than 25 years now.  As this Court may recall, Simplot first submitted a proposal for such an exchange to BLM in 1994, and after various proposals for and configurations of the parcels at issue, BLM prepared an Environmental Assessment ("EA") to evaluate the environmental effects of the 2007 Exchange pursuant to NEPA.  Dkt. #1-1 at 4.  On the basis of its analysis in the EA, BLM determined that the 2007 Exchange would not result in significant environmental effects and thereby issued a Finding of No Significant Impact ("FONSI") and Decision Record approving that version of the exchange.  *Id.*

In response, Plaintiffs Shoshone-Bannock Tribes of the Fort Hall Reservation ("Tribes") filed a complaint against BLM seeking judicial review of the 2007 Exchange.  Shoshone-Bannock Tribes v. United States Dep't of the Interior, Case no. 4:10-cv-004-BLW (D. Id.) ("Blackrock I") (Dkt. #1).  Simplot followed up by filing a motion to intervene, which the Court granted under both Rule 24 (a) and (b), finding that Simplot was entitled to intervene as of right and should be granted permission to do so in any event.  Blackrock I (Dkt. ## 5, 10, & 14).

This Court ultimately ruled in favor of the Tribes on their NEPA claim that asserted BLM acted arbitrarily and capriciously in issuing its FONSI and declining to prepare an Environmental

Impact Statement ("EIS") for the 2007 Exchange. Blackrock I, 2011 WL 1743656 (D. Id. May 3, 2011). This Court premised its ruling on three principal grounds. First, this Court found fault with BLM's FONSI analysis because it determined that the record did not contain a sufficiently detailed analysis of the reasonably foreseeable actions ("RFAs") that Simplot intended to take on the federal lands following the exchange. Id. at **8-10. Second, this Court also found that the environmental effects of one of those RFAs were "highly uncertain" due to unresolved concerns the U.S. Environmental Protection Agency ("EPA") had expressed about the prospect of Simplot's locating a part of its expanded phosphogypum stack ("gypstack") on relatively steeper terrain, as well as what it concluded was insufficient data in the record on groundwater flows and potential contamination. Id. at *10. Third, this Court also cited the proximity of the federal lands in the 2007 Exchange to the Eastern Michaud Flats Superfund Site ("EMF Site") and the potential controversy over the environmental effects of Simplot's prospective expanded gypstack as factors militating in favor of BLM's need to prepare an EIS. Id. at **10-11. Because this Court ruled the Tribes were entitled to summary judgment on their NEPA claim, it declined to address their claims alleging violations of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787 and the United States' treaty trust obligations. Id. at *12. On the basis of its NEPA ruling, this Court entered Judgment remanding the matter to BLM to prepare an EIS as outlined in its summary judgment opinion. Blackrock I (Dkt. # 77) (D. Id. May 3, 2011).

In denying Simplot's motion to amend the judgment, the Court clarified its summary judgment ruling by confirming that, in preparing its EIS, BLM would need to rely on Simplot's projected plans for the actions it intends to take on the federal exchange lands and, in particular,

those for expanding its gypstack at the Don Plant.[2]  <u>Blackrock I</u>, 2012 WL 1743656 (D. Id. Feb. 1, 2012).  This was a logical conclusion given that BLM has no permitting authority over the expansion of Simplot's gypstack or the other actions Simplot plans to take on the exchange lands, including siting of new cooling ponds to reduce the Don Plant's fluoride emissions.

In the decade since this Court's ruling in <u>Blackrock I</u> and following its direction, Simplot has invested significant amounts of time, energy, and material resources toward improving, evaluating, projecting, and mitigating potential environmental effects of not only the RFAs it intends to take on the exchange lands, but also those arising from its existing operations at the Don Plant that informed the proposal's environmental baseline for NEPA purposes.  These efforts are summarized in the Declaration of Alan Prouty, Simplot's Vice-President for Environmental and Regulatory Affairs, that Simplot submits in support of its motion.  Declaration of Alan L. Prouty (Feb. 25, 2021) ("Prouty Declaration").

Mr. Prouty focuses on three major initiatives Simplot has undertaken of substantial relevance to the concerns this Court outlined in its <u>Blackrock I</u> opinion, as follows:

• <u>Installation of a state-of-the-art liner</u> for the existing gypstack at the Don Plant and making related capital infrastructure improvements strategically designed to control releases of contaminants, including phosphorus, which has led to greatly reduced releases and a pronounced trend of improving water quality in the Portneuf River;

• <u>Preparation of a comprehensive Feasibility Study ("Study")</u> for Simplot's planned gypstack expansion and installation of cooling ponds that significantly enhanced Simplot's ability to

---

[2] At the same time, the Court emphasized these plans would necessarily have to reflect Simplot's estimates and projections and that they could not "be expected to predict every twist and turn" or "nail down every uncertainty."  <u>Blackrock I</u>, 2012 WL 1743656, Slip Op. at *1.

specify details as to the design, surface preparation, liner installation, and operation of these activities to substantially reduce their potential risk, uncertainty, and environmental effects; and

• Commissioning an in-depth study of the potential future impacts to groundwater and the Portneuf River to account for the actions Simplot plans to take on the federal exchange lands, revealing that such actions are projected to result in only minor incremental and effectively immeasurable increases in concentrations of certain contaminants that are not reasonably expected to change the trajectory of the ongoing downward trend in total concentrations of contaminants in the Don Plant's vicinity.  *Id.* at ¶¶ 4 & 11; *see* Blackrock Land Exchange Water Resources Technical Report at I-74 – I-80 (Aug. 2019) ("Water Res. Tech. Rpt.") (attached as Exh. B to Prouty Declaration); Exh. A to Complaint at 8 (Dkt. #1-1).

First, with respect to the liner Simplot added to its existing gypstack, Mr. Prouty explains that Simplot worked closely with lead agency Idaho Department of Environmental Quality ("IDEQ"), which approved the project design for compliance with all applicable state environmental protection requirements and also provided the Tribes and EPA with all critical documents for review and comment throughout the nearly eight-year period of project implementation.  *Id.* at ¶5.  Simplot invested approximately $50 million in the project, which features state-of-the-art design and utilizes 60-mil high density polyethylene ("HDPE") liner that reflects the well-established industry standard gypstack lining.  *Id.* at ¶¶ 6-7.  In September 2018, EPA confirmed that Simplot's lining of the existing gypstack was fully in accordance with the terms of the Consent Decree, as amended in 2010, into which Simplot entered to contribute to remediation of the EMF Site pursuant to the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75.  Id. at ¶ 7 & Exh. C to Prouty Declaration.  In addition, Simplot has implemented a series of other highly efficacious

remedial actions over the last decade to limit effects on groundwater, including removal of

contaminated groundwater from fourteen (14) active extraction wells that is recycled for use in

plant processes; implementation of a source control program to minimize potential groundwater

impacts from the Phosphoric Acid Plant ("PAP") area, which includes construction of various

capital infrastructure improvements; and a vast network of groundwater monitoring under which

water levels are measured at more than 200 wells across the site, with samples collected for

chemical analysis at 138 of those.  *Id.* at p. 5 n.1 & Exh. A to Prouty Declaration at I-26.

Mr. Prouty goes on to explain that this extensive monitoring shows that Simplot's new

liner on its existing gypstack and the other remediation measures it has implemented have been

extremely effective at reducing impacts to groundwater and resulting in improved water quality

in the Portneuf River.  Prouty Declaration at p. 6, Fig. 1.  Although the analysis in the Blackrock

Land Exchange Final Environmental Impact Statement ("FEIS") and appendices provide much

greater detail along these lines, the graph in Mr. Prouty's Declaration reveals that the level of

phosphorus in the Portneuf River measured at a location downstream of where the aquifer

underneath the Don Plant enters the river has decreased some 85 percent in just a little more than

the last decade.  *Id.* at ¶8.  The graph also shows that these concentrations, with an exception in

2016 and part of 2017, have regularly fallen below the target phosphorous levels set by the

Voluntary Consent Order ("VCO") Simplot entered into with IDEQ in 2008, including in each of

the last three years, even as those target levels have continued to decrease.  *Id.* at p. 6, Fig. 1

(VCO Target levels reflected by green line in graph).

Second, Mr. Prouty explains that Simplot invested in the preparation of an in-depth

feasibility study ("Study") that evaluated potential alternate sites near the Don Plant to determine

if they could accommodate its principal RFAs planned for the exchange lands, namely expansion

of its existing gypstack and construction of cooling ponds to enable it to meet its obligation under another 2015/2016 Consent Order[3] with IDEQ to replace the plant's existing cooling towers with a lower-fluoride emission alternative by July 2025.  Prouty Declaration at ¶¶ 9 and 19 & Exh. D.  This Study was expressly designed to respond directly to the need this Court raised for BLM to evaluate in somewhat more detail the  RFAs in which Simplot was likely to engage on the federal exchange lands in considering the indirect environmental effects associated with the Proposed Action and other action alternatives.  <u>Blackrock I</u>, Slip Op. at **5 & 8-11.  In addition to exploring virtually all practicable and reasonable alternatives for accomplishing the principal aims of Simplot's prospective actions on the exchange lands, the Study also includes a detailed description of the liner design for the proposed gypstack expansion that BLM in turn was able to use in thoroughly considering and disclosing potential impacts to groundwater resources in its FEIS.  Prouty Declaration at ¶ 10.  BLM attached the Study as Appendix E to the FEIS.

Further in this same context, Mr. Prouty also outlines the extensive list of legislative, regulatory, and other environmental duties and procedures Simplot still has to comply with and carry out before it will be able to effectuate any of the major RFAs on the lands acquired under the Exchange.  *See* Prouty Declaration at ¶¶ 12-20.  To offer a generalized visual depiction of the sheer number and nature of these procedural measures, Mr. Prouty sets forth a flow chart deriving from the VCO and 2010 EPA Amended Consent Decree showing each of the specific major regulatory steps and requirements that Simplot will need to fulfill at both the state and federal levels in the process of building just its planned expanded gypstack.  *Id.* at p. 8, Fig. 2.

---

[3] The original Consent Order to address fluoride emissions was signed in 2015, and was later amended in 2016.

Mr. Prouty goes on to provide a brief summary of these requirements in narrative form. *Id.* at ¶¶ 12-14. In particular, he notes that several of these processes prescribe explicit opportunities for the Tribes to be involved or consulted with during implementation. *Id.* at ¶¶ 12 & 14. He further explains that the Idaho Legislature enacted a new law in 2020 establishing design and construction standards for new gypstacks and expanded gypstack systems that will apply to Simplot's planned expanded gypstack. *Id.* at ¶ 15.

Moreover, Simplot will need to comply with all applicable air-quality regulatory requirements in building its planned new cooling ponds to replace the cooling towers currently in use at the Don Plant. *Id.* at ¶¶ 17-19 & 21. As Mr. Prouty explains, the projected construction of these cooling ponds will provide an environmental benefit by substantially reducing its fluoride emissions from the Don Plant in a manner and under a time frame that will enable Simplot to comply with its 2015/2016 Consent Order with IDEQ. *Id.* at ¶ 20.

Third, Mr. Prouty explains that the Water Resources Technical Report that Simplot commissioned, at the request of BLM and IDEQ as part of the effects analysis, utilized an EPA-approved conceptual site model and groundwater flux calculations that are used to support the company's compliance with the requirements in the 2008 VCO with IDEQ and the CERCLA Amended Consent Decree with EPA. *Id.* at ¶ 11. The results of this modeling showed the potential incremental increases of arsenic and phosphorous from the RFAs Simplot plans to take on the exchange lands are projected to be minimal to the point of effectively being immeasurable. *Id.* This report is included in the FEIS as Appendix E.

Following and in consideration of all of this additional study, planning, and analysis in which Simplot has invested since BLM considered the 2007 Exchange in an EA, the agency issued its FEIS in April 2020. As a result, the FEIS was able to evaluate in considerable detail

and to a substantially enhanced degree the estimated effects of Simplot's planned RFAs for the federal exchange lands in direct response to this Court's articulated need for such analysis in Blackrock I. *See, e.g.*, 2011 WL 1743656, at ** 8-11.

The FEIS also examined two additional action alternatives beyond the Proposed Action, which mirrored the 2007 Exchange.  Exh. A to Complaint at 11 (Dkt. #1-1).  Alternative B, the one Federal Defendants ultimately adopted and forms the basis of the 2020 Exchange, is meaningfully distinct from the originally Proposed Action in at least two key respects.[4]

First, and as described in the BLM Record of Decision ("ROD"), Alternative B provides for the conveyance of two additional parcels beyond those in the Proposed Action analyzed in the EIS.  *Id* at 12.  The first of these, Parcel A, is a 160-acre non-Federal parcel within Blackrock Canyon that Simplot voluntarily added to the lands to be transferred to BLM.  This was to compensate for the fact that the Proposed Action would have led to a net reduction of around 50 acres of Federal lands, and the addition of Parcel A serves to flip that equation around so that the 2020 Exchange has instead resulted in a 113-acre net gain of Federal acreage on which the Tribes will be able to exercise off-Reservation treaty rights.  Also important is the fact this 160-acre parcel is located within the original boundaries of the Fort Hall Reservation that the Tribes ceded in 1898.  The other lands added to the 2020 Exchange, collectively referred to as Parcel B, comprise approximately 940 acres within the current boundaries of the Fort Hall Reservation that Simplot has committed to arrange for donation either to the Bureau of Indian Affairs to be managed in trust for the benefit of the Tribes or, alternatively, directly to the Tribes under certain conditions.  *Id.* at 13 & n. 3.

---

[4] Mr. Prouty summarizes these and other changes that BLM and Simplot undertook in response to the Tribes' comments or that will benefit the general public and the Tribes in his declaration. *See* Prouty Declaration at ¶ 22.

Second, the 2020 Exchange as adopted differs from the 2007 Exchange insofar as the boundaries of the federal lands were modified specifically to avoid certain cultural and Tribal resources in the West Canyon area near the Don Plant as well as to move the parcel further from the Reservation boundary.  Exh. A to Complaint at 6 & 13 (Dkt. #1-1).  As previously described, although Simplot has shown that installing a gypsum liner on fairly steep terrain (2:1 or steeper slope) can be done safely and without undue environmental risk, the federal lands ultimately included in the 2020 Exchange nevertheless reduce this risk even further by allowing Simplot to avoid the steepest portion of the canyonland area in expanding its gypstack.  This modification therefore directly addresses the issue this Court raised about the potential uncertainty arising from Simplot's previous plans to expand the gypstack in a steeper canyonland area based on logistical concerns EPA had raised about whether a liner constructed in such terrain would prove sufficiently effective.  Blackrock I, 2011 WL 1743656, at ** 5-6.

On August 12, 2020, Federal Defendants issued the ROD documenting its approval of Alternative B as the 2020 Exchange.  Exh. A to Complaint (Dkt. #1-1).  In so doing, they engaged in a robust public interest analysis, evaluating thirteen (13) factors in determining that the 2020 Exchange would well-serve the public interest as required by 43 U.S.C. Section 1716(a) of FLPMA.  Id. at 7-10.  Federal Defendants also concluded that the 2020 Exchange conforms to the applicable BLM 2012 Pocatello Field Office Approved Resource Management Plan ("ARMP") and, in fact, noted that the federal lands to be conveyed as part of the 2020 Exchange are expressly identified as potentially suitable for disposal via exchange.  Id. at 12.

BLM and Simplot began implementing the 2020 Exchange in due course following issuance of the ROD and recently completed that process, culminating in conveyance of title to the respective non-federal and federal lands at issue just a little more than four months after the

2020 Exchange's approval, on December 15, 2020.  Prouty Declaration at ¶ 22.  Along these same lines, the applicable patents to the federal lands transferred pursuant to the 2020 Exchange have been duly recorded by Bannock and Power Counties.  As Mr. Prouty explains, proceeding with implementation of the 2020 Exchange without undue delay was necessary in part because of the considerable number of procedural and regulatory requirements Simplot needs to fulfill to practicably meet the time frame for approval and construction of the RFAs it plans to undertake on the newly acquired lands.  *Id.* at ¶¶ 19-20.  In particular, to comply with the time frame in the 2015/2016 IDEQ Consent Order and given the multi-phased permitting approach and associated requirements described in Mr. Prouty's Declaration, Simplot believes it is necessary to submit its initial permit application in the very near term, perhaps as early as this month.  *Id.* at ¶ 19.  This is based on its projection deriving from previous experience that the entire permitting process to secure authorization to construct the cooling ponds and its expanded gypstack will take approximately between 18-24 months, meaning that the necessary regulatory decisions for both projects is likely not to occur until the latter half of 2022.  *Id.*  As Mr. Prouty explains, meeting that time frame to secure those approvals is necessary for Simplot to meet the July 2025 deadline in the 2015/2016 IDEQ Consent Order given its reasonable estimate that it will take some two to three years to construct the expanded gypsum stack and cooling ponds.  *Id.* at ¶ 20.

## PROCEDURAL HISTORY

On December. 5, 2020, the Tribes filed their Complaint challenging Federal Defendants' approval of the 2020 Exchange (Dkt. #1).  The Tribes set forth four claims asserting that Federal Defendants have violated the 1900 Act, FLPMA, NEPA, the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), their rights under the Fort Bridger Treaty of 1868, and the United States' trust responsibility to the Tribes.  Complaint at ¶¶ 84-119.

Federal Defendants have not yet responded to the Complaint, and in fact, filed a motion seeking a six-week of extension of time in which to do so, which this Court granted.  Dkt. ## 3-4.  As a result, the deadline for Federal Defendants to respond to the Complaint is presently set for March 22, 2021.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24 authorizes two types of intervention, as of right (pursuant to paragraph (a)) or by permission of the court (pursuant to paragraph (b)).

To be entitled to intervene of right pursuant to subparagraph (a)(2) of Rule 24, an applicant needs to show that:  (i) it timely filed its motion; (ii) it has one or more significantly protectable interests related to the underlying subject of the action in which it seeks to intervene: (iii) disposition of the action may impair such interests; and (iv) existing parties will not adequately represent those interests.  Oakland Bulk & Oversized Terminal, LLC v. City of Oakland, 960 F.3d 603, 620 (9th Cir. 2020).  In a case in which the defendant is a governmental agency such as this one, an applicant must make a "very compelling showing" on the fourth of these criteria that the agency will not adequately represent the applicant's interests.  Id.

A federal court may also permissively grant intervention in an action even to a person who cannot satisfy the criteria for intervention of right who timely moves for such relief and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  District courts have extremely broad discretion to grant permissive intervention pursuant to subparagraph (b), although the following three criteria generally should guide the exercise of such discretion:  (i) the applicant has established an independent ground for jurisdiction; (ii) the motion is timely; and (iii) the applicant's claim or defense, and the main

action, have a question of law or a question of fact in common. United States v. City of Los Angeles, 288 F.3d 391, 403 (9th Cir. 2002).

It is typical for courts to grant intervention to a private party to a federal land exchange in a case challenging the validity of the exchange.  *See, e.g.*, Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1174 (9th Cir. 2000).  Indeed, this Court granted Simplot intervention under both Rules 24(a)(2) and 24(b) in the Tribes' challenge to the 2007 Exchange.  Blackrock I, Dkt. #14 (Mar. 16, 2010).  Moreover, because the Tribes assert a NEPA claim, it should be noted that the Ninth Circuit has expressly revoked the "none but the federal defendant" principle to which it used to subscribe when evaluating intervention in the context of NEPA claims in Wilderness Soc'y v. Forest Serv., 630 F.3d 1173 (9th Cir. 2011) (*en banc*).

## **ARGUMENT**

I.    **SIMPLOT SATISFIES ALL OF THE ELEMENTS IN FRCP 24(a)(2) TO BE ENTITLED TO INTERVENE AS OF RIGHT IN THIS ACTION.**

*A. Simplot's Motion Is Timely*

The Tribes filed their Complaint (Dkt. #1) less than three months ago, on December 5, 2020.  The only other filing that has occurred to date is Federal Defendants' unopposed motion for an extension of time to respond to the Complaint, which this Court granted, thereby moving that deadline to March 22, 2021.  Dkt. ##3&4.  Indeed, the Tribes have yet to file the status report regarding service of the summons and complaint that ordinarily is to be submitted within 30 days of filing of the Complaint pursuant to LR 4.1.  Nor has the Court issued its standard Rule 16 scheduling order.

Because no substantive papers have been filed in this action, no litigation schedule has been established, and Simplot has moved to intervene during the very earliest phase of the case,

its intervention will not prejudice any party or cause any delay in the proceedings.  As a result, Simplot's motion is timely.

B.  *Simplot Has "Significant Protectable Interests" at Stake in the Resolution of this Action.*

To satisfy the second prong of Rule 24(a)(2), an applicant for intervention must demonstrate a significantly protectable interest by showing: (1) that the interest it asserts is legally protectable; and (2) that there is a relationship between its legally protected interest and the claims at issue in the lawsuit.  United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004); Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir. 1993).  The Ninth Circuit has held that "whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established."  Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993).

Here, as a party to and proponent of the 2020 Exchange that the Tribes challenge in this case, Simplot undoubtedly has significant legally protectable interests at issue in its resolution. Many of those interests are outlined in Mr. Prouty's supporting declaration, and arise in part from the myriad plans, resource assessments, and feasibility studies in which Simplot has invested that serve as key factual underpinnings of the effects analysis the Tribes challenge in BLM's FEIS.  Indeed, Simplot engaged in much of this work most directly in response to this Court's findings and analysis in Blackrock I.

Simplot also has a significantly protectable interest in the underlying 2020 Exchange itself given that the federal lands it has acquired pursuant to BLM's approval are critical to the Company's ability to continue to operate the Don Plant and to satisfy its multiple environmental obligations in doing so over the longer term.  Its interest in this regard has only been magnified following the Study that was done to examine other alternative approaches which revealed that

Simplot has few, if any, other economically and technically feasible ways forward in order to achieve these critically important twin objectives.  Finally, the fact that the 2020 Exchange has been consummated and Simplot now holds patented title to the former federal lands pursuant to the exchange lends further weight to its interests at issue in this case.  Indeed, the Ninth Circuit has determined that this development has actually made Simplot a necessary party to the litigation within the meaning of Federal Rule of Civil Procedure 19(a), without which the Court cannot effectively afford the relief the Tribes seek.  *See* Kettle Range Conserv. Grp. v. Bureau of Land Mgmt., 150 F.3d 1083, 1086 (9th Cir. 1998).

As a result, Simplot has multiple significant legally protectable interests at stake in the resolution of the action to justify its intervention of right.

*C.  Simplot's "Significant Protectable Interests" Could be Impaired by an Adverse Ruling.*

In assessing the third element of Rule 24(a)(2), the Ninth Circuit has stated that it follows the guidance of the advisory committee notes for that rule, which provides that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in the action, he should, as a general rule, be entitled to intervene."  Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Advisory Cmte. notes from 1966 Amendment).

Here, particularly under the lenient standard informed by practicality applicable in the Ninth Circuit, Simplot's interests from both a legal and business perspective have the potential to be meaningfully impaired if the Tribes were to prevail on one or more of their claims and secure whatever remedy this Court may determine to be appropriate, equitable, and within its authority under the circumstances, notwithstanding the fact the 2020 Exchange has been completed.

*D.  Federal Defendants Cannot Adequately Represent Simplot's Interests in this Action.*

Finally, even though they can be expected to vigorously defend their approval of the 2020 Exchange, Federal Defendants cannot be said to be in position to adequately represent Simplot's wholly distinct set of interests, for at least three principal reasons.

First, Federal Defendants cannot adequately represent Simplot's interests insofar as the bases for many of the concerns this Court expressed in reviewing the EA that BLM prepared for the 2007 Exchange in <u>Blackrock I</u> relate to the potential environmental effects of the RFAs that Simplot plans to carry out on federal lands involved in the 2020 Exchange.  Even though Federal Defendants carefully analyzed the impacts of these future planned developments in the FEIS, at the same time they are not in a position to provide the depth and comprehensiveness of expertise on certain principal issues related to their approval and construction to the degree Simplot is, in particular because BLM lacks authority over the approval of Simplot's prospective cooling ponds or expanded gypstack.  *See* Prouty Declaration at ¶ 4.  Adding further potency to this factor is Simplot's belief that it may be appropriate and useful in this case for the Court to consider extra-record clarifying presentations and explication more within Simplot's expertise and experience, or even consider a judicial site visit, for purposes of enhancing the Court's understanding of some of the more complex technical and scientific matters suffused within certain of the Tribes' claims.  Simplot wishes to clarify that it raises this prospect simply to acknowledge upfront in its initial filing its view that such processes may be useful to the Court, and thereby lends further weight in support of its intervention in this case, and not to suggest in any way that BLM's administrative record is or will be inadequate.  Moreover, mindful of the well-established rule ordinarily limiting judicial review to the administrative record, Simplot acknowledges that it would need to establish that any such extra-record materials it might ask the Court to consider fit squarely within the exception for supplementing that record with materials

that would be helpful and necessary to the Court's review of the Tribes' claims, particularly insofar as they relate to Simplot's planned RFAs on the exchange lands that are outside BLM's authority.  *See* <u>Lands Council v. Powell</u>, 395 F.3d 1019, 1030 (9th Cir.2004).[5]

Second, neither can Federal Defendants adequately represent the significant legal, financial, and property interests that Simplot has at stake in ensuring that it can proceed with expanding its gypstack and constructing cooling ponds at the Don Plant site, as described in detail above.  Rather, BLM's interests are defined principally by the requirement in NEPA for it to ensure adequate consideration and disclosure of the environmental effects of the 2020 Exchange, and its duty under FLPMA to ensure that the public interest will be well-served by the 2020 Exchange, both of which it has done, of course, and it has no regulatory authority or real interests that extend beyond the 2020 Exchange itself.  Exh. A to Complaint at 6-9 (Dkt. #1-1).

II.     <u>IN THE ALTERNATIVE, THE COURT SHOULD GRANT SIMPLOT PERMISSIVE INTERVENTION PURSUANT TO FRCP 24(b).</u>

In the alternative, Simplot requests permissive intervention under Rule 24(b).  This portion of the rule requires that "on timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."

Simplot has already established that its intervention motion is timely.  See Discussion at 13-14, supra.  With respect to the other two factors courts routinely consider, they are driven largely by pragmatic considerations and to be determined on a case-by-case basis.  <u>City of Los</u>

---

[5] As summarized by the Ninth Circuit, district courts are permitted to consider evidence beyond the administrative record in reviewing an agency action: (1) if necessary to determine ''whether the agency has considered all relevant factors and has explained its decision,'' (2) if ''the agency has relied on documents not in the record,'' (3) ''when supplementing the record is necessary to explain technical terms or complex subject matter,'' or (4) ''when plaintiffs make a showing of agency bad faith.''  <u>Lands Council</u>, 395 F.3d at 1030 (quoting <u>Southwest Ctr. for Biological Diversity v. Forest Serv.</u>, 100 F.3d at 1443, 1450 (9th Cir. 1996)

Angeles, 288 F.3d at 403.  Here, those considerations clearly counsel in favor of permissive

intervention, as exemplified by the analysis of the court in City of Williams v. Dombeck, 2000

WL 33675559 (D.D.C. Aug. 17. 2000).  In that case, the District Court granted permissive

intervention to the private proponent of a federal land exchange, stating that "clearly, as the

source and one of the beneficiaries of [the land exchange, the proponent] shares questions of law

or fact with the main action."  *Id.* at *4.  Therefore, even though the proponent did not meet the

standard for intervention as of right under NEPA, it was permitted to permissibly intervene.  *Id.*

Here, under the well-established precedent of the Ninth Circuit, Simplot is a necessary

party to this action.  *See* Kettle Range, 150 F.3d at 1086.  As such, all of the relevant factors

point to its being permitted to intervene under Federal Rule of Civil Procedure 24(b) even if for

some reason the Court were to determine that it is not entitled to intervene as of right pursuant to

Rule 24(a)(2).

## **CONCLUSION**

For the foregoing reasons, and as supported by the factual statements in the Declaration

of Alan L. Prouty that Simplot contemporaneously files in support of this motion, Simplot

respectfully submits that the Court should follow the reasoning and result it reached in Blackrock

I and grant Simplot's motion to intervene as of right or, in the alternative, permissively.

Respectfully submitted this 25th day of February 2021.


s/ Steven B. Andersen
Steven B. Andersen
KIRTON AND MCCONKIE
Stephen J. Odell
MARTEN LAW, PLLC
Thomas C. Perry, Senior Counsel
J.R. SIMPLOT COMPANY

Attorneys for Applicant-in-Intervention J.R. Simplot Company

**CERTIFICATE OF SERVICE**

I  HEREBY  CERTIFY  that  on  the 25th day of February 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Paul C. Echo Hawk | paul@echohawklaw.com |
| William F. Bacon | bbacon@sbtribes.com |
| Devon Lehman McCune | devon.mccune@usdoj.gov |

　　　　　　　　　　　　　　　　 /s/ *Steven B. Andersen* 　　　　　　
　　　　　　　　　　　　　　　　Steven B. Andersen