Steven B. Andersen, ISB # 2618
**KIRTON AND MCCONKIE**
999 W. Main Street, Ste. 100
Boise, Idaho 83702
Telephone: (208) 370-3325
E-mail: sandersen@kmclaw.com

Thomas C. Perry, ISB # 7203
**J.R. SIMPLOT COMPANY**
1099 W. Front Street
Boise, Idaho 83707
Telephone: (208) 780-7430
E-mail: thomas.perry@simplot.com

Stephen J. Odell, OSB # 903530 (Admitted *Pro Hac Vice*)
**MARTEN LAW, LLP**
1050 SW Sixth Ave., Ste. 2150
Portland, Oregon 97204
Telephone: (503) 241-2648
E-mail: sodell@martenlaw.com

*Attorneys for Defendant-Intervenor J.R. Simplot Company*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION,<br><br>Plaintiff,<br><br>LAURA DANIEL-DAVIS, Principal Deputy Assistant Secretary for Land and Minerals Management, UNITED STATES DEPARTMENT OF THE INTERIOR and UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendants,<br><br>and<br><br>J.R. SIMPLOT COMPANY<br><br>Defendant-Intervenor. | Case No.: 20-cv-00553-BLW<br><br>**DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY IN SUPPORT OF MOTION FOR THE COURT TO CONSIDER EXTRA-RECORD MATERIAL** |

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO CONSIDER EXTRA-RECORD MATERIAL - 1

## INTRODUCTION

Defendant-Intervenor J.R. Simplot Company ("Simplot") filed the underlying motion for the Court to consider two extra-record documents (Dkt. no. 26) based on three separate grounds. Neither the Federal Defendants, nor the Plaintiff Shoshone-Bannock Tribes of the Fort Hall Reservation ("Tribes") opposed two of the grounds justifying the Court's consideration. Specifically, Federal Defendants indicate they do not oppose the motion insofar as the materials at issue are considered for background factual purposes or to help explain technical material in the record. Federal Defendants further do not object to the Court taking judicial notice of the report to prove its existence and contents. (Dkt. No 28). The Tribes similarly do not oppose the Court's consideration of such materials to explain technical terms or complex subject matter during the parties' briefing on the merits. Instead, the Tribes' objection is based on their concern that Simplot may not actually use the materials to explain technical terms or complex subject matter to aid the Court in its understanding. The Tribes' concern that the records will be used outside of any purpose permitted by the Court is inapposite to Simplot's motion and can be raised within the course of proceedings as the Tribes deem appropriate. Given the consensus among the parties, at a minimum, the Court should grant Simplot's motion to consider the extra-record materials for background purposes and to aid in understanding the complex subject-matter.

## SUMMARY OF ARGUMENT

Simplot's motion requests the Court to consider two documents that are not within the administrative record as originally lodged: the Declaration of Alan L. Prouty (Dkt. No. 6-2) that Simplot filed in support of its granted intervention motion and a single exhibit (Exhibit G) to that declaration consisting of a series of June 2020 memoranda. The memoranda are comprised of

Off-Plant Operating Unit Ecological Assessments that EPA conducted to address the fluoride monitoring portion of the remedy identified in its 1998 EMF ROD and to update the human health risk assessment performed in 1995 as part of the original Remedial Investigation for the EMF Site ("EPA's Off-Plant OU Assessments") (Dkt. No. 6-9).  Simplot presented three grounds in support of its Motion:

1) Both items fit squarely within the exception for extra-record materials that explain technical terms or elucidate complex subject-matter and are therefore necessary or valuable to the Court's review;

2) Consideration of the exhibit is justified because it consists of three reports of the U.S. Environmental Protection Agency ("EPA"), a cooperating agency in preparation of the Final Environmental Impact Statement ("FEIS"), which provide its most recent assessments of the effects of various manufacturing byproducts addressed in the Complaint that are in alignment with the analysis in the FEIS and substantially similar to other material included in the record; and

3) The Court may take judicial notice of the exhibit because EPA generated the reports in the ordinary course of its business, and the accuracy and veracity of their contents are not reasonably subject

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO CONSIDER EXTRA-RECORD MATERIAL - 3

to dispute. Neither the Tribes nor Federal Defendants challenge the accuracy or veracity of these reports in their response briefs.

For the foregoing reasons, the Court should consider both the First Prouty Declaration and Exhibit G to that declaration – at the very least for purposes of factual background information and to assist in explaining or clarifying highly technical issues and subject-matter in the administrative record. In particular, these materials will be useful in providing appropriate context for many of the Tribes' allegations regarding background levels or projected environmental effects of various substances in and around Simplot's Don Plant that is part of the Eastern Michaud Flats Superfund Cleanup Site ("EMF Site"). Moreover, considering these materials is consistent with the Court's approach in reviewing the earlier, 2007 proposed iteration of the land exchange. See Shoshone-Bannock Tribes v. United States Dep't of the Interior, No. 4:10-cv-004-BLW, 2011 WL 1743656 (D. Id. May 3, 2011) ("Blackrock I").

## I. THE EXTRA-RECORD MATERIALS ARE APPROPRIATE FOR THE COURT TO CONSIDER AND THE TRIBES' ARGUMENT IS SPECULATIVE AND PREMATURE.

Both Federal Defendants and the Tribes indicate that they do not oppose the Court's consideration of the two extra-record documents to the extent they are used for specific purposes, namely to explain technical terms or complex subject matter in the summary judgment briefing and/or as explanatory factual background. Federal Defendants also state they do not oppose the Court taking judicial notice of EPA's Off-Plant OU Assessments (Exhibit G) for purposes of their existence and contents. Fed. Defs.' Resp. at 3-4 (Dkt. no. 28).

The Tribes' objection is based on their concern that Simplot will eventually attempt to use the extra-record materials for other purposes, and they believe the Court is familiar enough with the complex subject matter of this case that it will not need to avail itself of such materials.

Tribes' Resp. at 2-3 (Dkt. no. 27).  However, concerns about what may happen during the course of briefing is premature especially when both the Tribes and Federal Defendants concede that the materials encompassed by the Motion are appropriate for the Court's consideration for certain purposes.

In addition, the only case the Tribes cite in support of their argument involves a declaration wholly distinct from the First Prouty Declaration at issue.  In Alsea Valley Alliance v. Evans, 143 F. Supp. 2d 1214 (D. Or. 2001), the court explained that the plaintiffs had submitted the declaration to provide the declarant's "interpretation, opinion and argument of what ultimate conclusions the Record can and cannot support" in support of their claims on the merits. *Alsea Valley*, 143 F. Supp. 2d at 1216.  Here, on the other hand, the First Prouty Declaration simply summarizes the substantial efforts Simplot has taken in the decade since this Court's Blackrock I rulings to follow the Court's direction in those rulings, and to aid Defendant Bureau of Land Management ("BLM") in evaluating the effects of the reasonably foreseeable actions Simplot intends to take on the exchanged lands and to remediate the effects of its existing operations at the Don Plant that served to inform the exchange's environmental baseline in the 2020 Land Exchange FEIS.   In providing this summary, the declaration expressly draws from and relies almost exclusively on materials in the administrative record.  Indeed, as explained in Simplot's opening brief, all but one of the declaration's seven exhibits are already in the record. *See* Simplot's Op'g Brf. at 7 (Dkt. no. 26-1).  Therefore, the declaration will prove extremely helpful to the Court as it navigates the 65,000-page-plus administrative record and reviews the extraordinary amount of work Simplot has undertaken specifically to address the Court's concerns.  Nowhere does the First Prouty Declaration seek to attack or argue the merits of the Tribes' Complaint.

Likewise, the EPA's Off-Plant OU Assessments describe results of supplemental monitoring conducted in the decade between the 2007 Land Exchange and its 2020 version, and were issued in June 2020, prior to the 2020 Land Exchange Decision. In fact, they supplement and build on the Baseline Human Health Risk Assessment of the EMF Site prepared for EPA in July 1995 that is included in the administrative record. AR 62904-24. The reports will therefore serve as helpful context in areas of highly technical subject-matter as well as for background factual purposes.

By way of example, these reports reveal that much of the supplemental monitoring that was conducted at the request of the Tribes. *See* Exh. G to First Prouty Declaration at 8 (Dkt. no. 6-9) ("Based on the Tribes' request, the EPA conducted additional soil and vegetation sampling in the Bottoms Area"); *Id.* at 10 ("The Tribes requested that livestock and bison be included in the risk re-assessment due to the economic importance of grazing livestock and their sensitivity to fluoride"); *Id.* at 12 ("Based on the request of the Tribes, during the summer of 2011, the EPA sampled fluoride levels in soil and vegetation in a study unit located in the Bottoms"). In addition, the assessments provide helpful background for consideration of the Tribes' claims challenging the 2020 Land Exchange FEIS because they highlight that BLM's analysis of effects in that FEIS did not occur in a vacuum, but rather, in an overall regulatory framework of ongoing monitoring, assessment, and remediation that Simplot has undertaken pursuant to the amended Consent Decree it entered with EPA. AR 47671-47766.

Finally, the assessments will be helpful to the Court in understanding and clarifying the methodology and effects analysis undertaken by the BLM in the 2020 Land Exchange EIS, which is similar to how the Court cited and relied on similar EPA materials in Blackrock I. *See* Simplot's Op'g Brf. at 4 (Dkt. no. 26-1). In this light, the results of the assessments, which

generally corroborate the findings and effects analyses in the 2020 Land Exchange EIS, will be helpful in elucidating the record in reviewing the Tribes' allegations as to how it should be construed, particularly given EPA's special expertise concerning such matters.

In conclusion, both the First Prouty Declaration and EPA's Off-Plant OU Assessments fit squarely within the exception for extra-record materials set forth in Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005), as they explain or elucidate technical or complex subject-matter in the record and also provide valuable factual background information for the Court's review.[1]

## II. EPA'S ASSESSMENTS ARE SIMILAR TO INFORMATION ALREADY IN THE ADMINISTRATIVE RECORD AND ARE APPROPRIATE FOR JUDICIAL NOTICE.

Federal Defendants make clear they do not object to the Court taking judicial notice of EPA's Off-Plant OU Assessments to prove their existence and contents. The Tribes wholly ignore judicial notice in their response.[2]

Of note, Federal Defendants omit a key condition to this Court's formulation of the standard for taking judicial notice of government documents such as EPA's Off-Plant OU Assessments here. See Fed. Defs.' Resp. at 3-4 (citing Friends of the Clearwater v. Higgins, 523

---

[1] In light of the Tribes' response, it is worth quickly clarifying and confirming that Simplot has never taken the position that the extra-record materials at issue in its Motion are necessary to defend against the Tribes' claims. See Tribes' Resp. at 3 ("If Simplot believes that it needs this extra-record material to defend against the Tribes' claims, then it should have asked BLM why it didn't consider this information before approving the [2020] Land Exchange or ask BLM to reconsider its decision with the benefit of this additional material"). Indeed, in its opening brief, Simplot went out of its way to disclaim this very position. See Simplot's Op'g Brf. at 2-3 (noting its view that the extra-record materials that would aid in the Court's review of the Tribes' claims do not reflect "any fundamental inadequacy inherent in the present record").

[2] Neither Federal Defendants nor the Tribes address the ground in Simplot's opening brief that EPA's Off-Plant OU Assessments that comprise Exhibit G are a natural extension to many of the documents already included in the administrative record for the 2020 Land Exchange, and consequently, it stands wholly unopposed. See Simplot's Op'g Brf. at 14 (Dkt. no. 26-1).

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO CONSIDER EXTRA-RECORD MATERIAL - 7

F. Supp. 3d 1213 (D. Id. 2021)). In Friends of the Clearwater, this Court stated in full as follows: "Thus, the Court may take judicial notice of government documents to prove their existence and contents, but not for the truth of the matter asserted therein *when the facts are disputed*." *Id.* at 1222. Federal Defendants' brief left out this final, italicized portion of the Court's articulation of the standard, which is important because they do not dispute the findings in EPA's assessments and, indeed, it would be quite remarkable if they did, given that they are published findings of a fellow cooperating federal agency.[3]

The primary purpose for Simplot moving the Court to consider the EPA's Off-Plant OU Assessments is to allow the Court to exercise its review in the appropriate context of all the assessments, monitoring, and remediation that has occurred (and will continue to occur) at the EMF Site. Moreover, the assessments also reveal that the Tribes had extensive opportunities to participate in the processes leading to that work, much of which was done at their specific behest.

## CONCLUSION

Simplot's motion was based on three independent grounds. Federal Defendants agree with those grounds, and the Tribes did not oppose two of them. The Tribes' sole objection is based upon prospective arguments it believes Simplot may make on the merits, but that briefing has not yet occurred. Therefore, for the foregoing reasons, the Court should grant Simplot's motion to consider both the First Prouty Declaration (Dkt. No. 6-2) and Exhibit G to that declaration (Dkt. No. 6-9).

---

[3] Simplot also addresses Judicial Notice in addition to the other grounds in support of the Court's consideration of its extra-record materials given that this Court has of course indicated that in cases governed by the scope of review set forth in the Administrative Procedure Act, such as the present action, the material must satisfy one of the Lands Council exceptions and also qualify for Judicial Notice. Friends of the Clearwater, 523 F. Supp. 2d at 1222 n.4.

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF MOTION TO CONSIDER EXTRA-RECORD MATERIAL - 8

Respectfully submitted this 4th day of February 2022.

s/ Steven B. Andersen
Steven B. Andersen
KIRTON AND MCCONKIE
Stephen J. Odell
MARTEN LAW, LLP
Thomas C. Perry, Senior Counsel
J.R. SIMPLOT COMPANY

Attorneys for Defendant-Intervenor J.R. Simplot Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of February 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Paul C. Echo Hawk | paul@echohawklaw.com |
| William F. Bacon | bbacon@sbtribes.com |
| Devon Lehman McCune | devon.mccune@usdoj.gov |

                                              /s/ *Steven B. Andersen*
                                              Steven B. Andersen