Steven B. Andersen, ISB #2618
Jennifer Reinhardt-Tessmer, ISB #7432
**KIRTON AND MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, Idaho 83702
Telephone: (208) 370-3325
E-mail: sandersen@kmclaw.com
jtessmer@kmclaw.com

Thomas C. Perry, ISB #7203
**J.R. SIMPLOT COMPANY**
1099 W. Front Street
Boise, Idaho 83702
Telephone: (208) 780-7430
E-mail: thomas.perry@simplot.com

Stephen J. Odell, OSB #903530 (admitted *Pro Hac Vice*)
**MARTEN LAW, PLLC**
1050 SW Sixth Ave., Ste. 2150
Portland, Oregon 97204
Telephone: (503) 241-2648
E-mail: sodell@martenlaw.com

*Attorneys for Defendant-Intervenor J.R. Simplot Company*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION, | ) ) ) | Case No.: 4:20-cv-00553-BLW |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO STRIKE THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL** |
| LAURA DANIEL-DAVIS[1], Principal Deputy Assistant Secretary for Land and Minerals Management; UNITED STATES DEPARTMENT OF THE INTERIOR; and UNITED STATES BUREAU OF OF LAND MANAGEMENT, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| J.R. SIMPLOT COMPANY | ) ) | |
| Defendant-Intervenor. | ) ) | |

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Ms. Daniel-Davis is being automatically substituted for her predecessor in the official public position she now holds for the U.S. Department of the Interior.

MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO STRIKE THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL - 1

Defendant-Intervenor J.R. Simplot Company ("Simplot"), hereby respectfully submits this Memorandum in Support of its Motion to Strike the Declarations of Kelly Wright and Nathan Small.

## I.      INTRODUCTION

The National Environmental Policy Act ("NEPA") explicitly provides opportunities for public and Tribal involvement. Indeed, the enlarged participation opportunity was one of the reasons Plaintiff, the Shoshone-Bannock Tribes of the Fort Hall Reservation ("Tribes") advanced for why an Environmental Impact Statement ("EIS"), and not an Environmental Assessment, was necessary in *Shoshone-Bannock Tribes of the Fort Hall Reservation v. U.S. Dep't of the Interior* 2011 WL 1743656, *9 (D. Idaho, May 3, 2011) ("*Blackrock I*"). During the NEPA process, interested stakeholders can provide opinions, data, and hire experts – all to aid or challenge BLM's "hard look" analysis. Simplot and the Tribes have availed themselves of these opportunities during this process, which are captured in the Administrative Record.  This is why judicial review of such decisions is limited to the record and why exceptions allowing the introduction of materials outside of the record are narrowly applied. Otherwise, stakeholders could send BLM on a never-ending quest to continually supplement the EIS analysis every time post-record information was presented to the agency. *See Marsh v. Or. Natural Res. Council*, 490 U.W. 360, *373, 109 S.Ct. 1851 (1989).

The Tribes are attempting to disrupt this ordered process through their submission of the declarations of Kelly Wright and Nathan Small. Although the Tribes supposedly offered the declarations to establish Article III standing in support of their Motion for Summary Judgment, they in fact use the declarations to introduce a voluminous amount of supplemental or post-record information that is not contained within the administrative record and that is not relevant to standing but rather, goes to the Tribes' substantive arguments in this case. The Tribes made no

effort to argue any applicable exceptions applied that would enable the Court to rely on these extra-record materials.

Further compounding the problem, many of Wright and Small's statements fail to comply with Federal Rule of Civil Procedure 56(c)(4). Specifically, their declarations are wrought with inadmissible evidence and testimony beyond the scope of the declarants' personal knowledge and competence. Fairly viewed, much of this information is simply introduced as an impermissible collateral attack on the BLM's decision.

Finally, many of the statements in the declarations are simply inconsistent with more than three decades of extensive monitoring information and government studies. To the extent the Court considers this information, it should also consider the responsive information in the concurrently filed Declarations of Andrew Koulermos ("Koulermos Dec.") and Alan Prouty ("Prouty Dec.") in Support of Motion to Strike the Declarations of Kelly Wright and Nathan Small.[2]  However, setting aside issues of accuracy, the Court should strike all references to, and attached, extra-record materials, as well as all statements in Wright and Small's declarations that fail to comply with Rule 56(c)(4).

## II.    ARGUMENT

**The Court Should Strike all Statements and Materials in the Small and Wright Declarations that are Outside the Record and Fail to Comply with Rule 56(c)(4).**

This Court's review of the BLM's approval of the Blackrock land exchange, is governed by the Administrative Procedure Act, and is limited to the administrative record, as set forth in the

---

[2] For example, Mr. Wright alleges that the site is "unremediated."  As demonstrated by the FEIS, this statement is patently false.  Moreover, the concurrently-filed Koulermos Dec. establishes that Simplot has extensively studied, monitored and remediated the environmental impacts of the site – and those measures (as evidenced by the Administrative Record) are effective. Mr. Wright further asserts the Portneuf River is being contaminated when in fact, the EPA's comprehensive study found no threat or potential threat to public health or the environment. *See* Koulermos Dec. at ¶¶ 10-12.  Likewise, the EPA's sampling for fluoride in soils and vegetation in the Bottoms Area revealed levels consistent with background conditions.  *See* Prouty Dec. at ¶ 11.

governing Memorandum Decision and Order (Dkt. 33 at 2); *see also* 5 U.S.C. § 706 and *Ranchers*

*Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108,

1117 (9th Cir. 2007) ("Under the APA, courts must refrain from de novo review of the action itself

and focus instead on the agency's decision-making process."); *Camp v. Pitts*, 411 U.S. 138, 142

(1973) (per curiam) ("the focal point for judicial review should be the administrative record already

in existence, not some new record made initially in the reviewing court.").

It is the Tribes' burden to demonstrate with particularity that their proposed extra-record

submissions fit within one of four narrow exceptions to the record-review rule:

> (1) if necessary to determine whether the agency has considered all
> relevant factors and has explained its decision, (2) when the agency
> has relied on documents not in the record, (3) when supplementing
> the record is necessary to explain technical terms or complex subject
> matter, [or] . . . (4) when plaintiffs
> make a showing of agency bad faith.

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th[h] Cir. 1996); *see*

*also Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) (striking extra-record

material because plaintiff failed to show how the material fit within the exceptions to record

review). It is not appropriate for a party to submit extra-record materials to attack the substantive

basis of an agency's decision. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450

F.3d 930, 943-44 (9th Cir. 2006); *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450.

The Tribes dedicated a mere paragraph in their memorandum in support of their Motion

for Summary Judgment to demonstrate the Tribes' standing (Dkt. 37-1 at 9), yet they filed

thousands of pages (the majority of which are outside of the administrative record) as attachments

to Mr. Wright's Declaration, under the guise of establishing standing. The Tribes did not make

any argument that the extensive extra-record materials they submitted fit within one of the four

narrow exceptions.  Plaintiff's attempt to introduce extra-record materials this late in proceedings (particularly given the extensive record), should not be validated by this Court.

In addition to being confined to the administrative record, both declarations must comply with the requirements under Federal Rule of Civil Procedure Rule 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affidavit or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "[I]n certain instances—such as when a declaration 'states only conclusions, and not such facts as would be admissible in evidence,'—can a court disregard a self-serving declaration for purposes of summary judgment."  *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (quoting *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999)); *see also Torres v. Mercer Canyons, Inc.*, 2015 WL 10937553 (E.D. Wash. 2015) (a court must not accept evidence in a declaration when it would be inadmissible at trial); *Mortensen v. First Am. Title Co., Inc.*, No. 2:11-CV-0063-EJL, 2013 WL 1222566, at *6 (D. Idaho Mar. 25, 2013) ("Hearsay evidence is not admissible except as provided by the rules of evidence or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.").

As further explained below, both Wright and Small's declarations contain testimony on which neither is competent to testify.  Further, their testimony is largely inadmissible, as most of their statements lack foundation, are based on hearsay, and are not relevant to the challenged action.  *See* Fed. R. Evid. 602, 802, 402.

Specifically, with reference to relevancy, both declarations provide testimony that is not relevant to the requisite particularized, concrete, actual or imminent, and personal injuries that support standing (the ostensible purpose for the declarations).  Even though the bar for establishing

standing in an APA appeal is admittedly not high, the plaintiff cannot rely on mere allegations that do not comport with the Federal Rules, but must set forth by affidavit or other evidence specific facts to survive a motion for summary judgment pursuant to Fed. R. Civ. P. 56(e). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Since "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), "Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden." *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (internal citations omitted).

Here, Plaintiff attempted to use the declarations as an improper avenue to influence the Court's analysis of substantive issues, and thereby missed the mark on demonstrating standing. Both Wright and Small provide generalized and vague statements about the land involved in the completed exchange and speculation about the potential impacts of the activities Simplot plans to implement on the acquired lands, which are irrelevant to the requisite injury or causation for standing.[3]

A closer examination of the Wright and Small declarations follows, with Simplot's correlating arguments regarding admissibility.

1. **Wright Declaration:**

a. Paragraphs 1-11

Paragraphs 1-11 provide a recitation of Mr. Wright's administrative experience and the foundation for his statements in his declaration. Mr. Wright is the Program Manager of the EWMP. However, Mr. Wright fails to specify the basis for many of his statements, including which

---

[3] To establish Article III standing: (i) plaintiff must have suffered an injury in fact, which is concrete, particularized and imminent; (ii) there must exist a causal connection between the injury and the conduct complained of; and (iii) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 56061 (1992). To satisfy the first prong (a particularized injury in fact), the alleged injury "must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

statements stem from his own personal knowledge and those that were supplied by others. A number of statements in his declaration do not align with the extensive monitoring, data and studies overseen by the EPA, and in fact, are not rooted at all in the administrative record. *See* Prouty and Koulermos Decs.  Although Simplot objects to subsequent paragraphs in the Wright Declaration reflecting hearsay, Simplot does not move to strike paragraphs 1-11.

    <u>b.</u>  <u>Paragraph 12</u>

Mr. Wright's statement in Paragraph 12 that the Fort Bridger Treaty ("Treaty") recognizes the Tribes' off-reservation rights constitutes a legal conclusion and misstates the Treaty.  Legal conclusions "are for the Court's determination, not for a witness." *United States v. Scholl*, 166 F.3d 964, 973 (9th Cr. 1999).  The Court should not consider Mr. Wright's recitation of the Treaty's language and any arguments based upon his opinion. This paragraph should be stricken.

    <u>c.</u>  <u>Paragraphs 15-16</u>

In Paragraphs 15 and 16, Mr. Wright describes a waste management act passed by the Fort Hall Business Council ("FHBC").  These statements do not establish a nexus to BLM's decision, goes beyond standing, and is not relevant to Tribes' claims.  Pursuant to Fed. R. Evid. 402, only relevant evidence is admissible.  The fact that FHBC passed an act that in turn set up a waste program is not cited by the Tribes as a part of their arguments and is irrelevant.  These paragraphs should be stricken.

    <u>d.</u>  <u>Paragraph 19</u>

Mr. Wright's statement in Paragraph 19 avers that the exchanged lands do not hold the same Tribal significance as the lands provided to Simplot.  Mr. Wright cites no authority or evidence to support this statement. Instead, the statement conveys a vague claim of difference in "significance" with no foundation as to who made the statement, what was said, or why the

statement was made.  This assertion lacks foundation and personal knowledge and is based upon hearsay.  A witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge of the matter.  Fed. R. Evid. 602.  Hearsay evidence is not admissible except as provided by the rules of evidence or other rules prescribed by the Supreme Court. Fed. R. Evid. 802.  This paragraph should be stricken.

e.  Paragraph 20

Likewise, in Paragraph 20, Mr. Wright states that Tribal members actively hunted and maintained traditional and cultural practices on the land provided to Simplot.  This statement in Paragraph 20 lacks foundation and personal knowledge and is based on hearsay and is therefore inadmissible.  *See* Fed. R. Evid. 602, 802*.*  He provides no indication of personal knowledge pertaining to hunting or cultural practices, let alone when the Tribal members hunted or maintained practices on the land Simplot now owns.  This paragraph should be stricken.

f.  Paragraph 21

In Paragraph 21, the Wright Declaration states that public wells within 3 miles of the federal land on Howard Mountain provide drinking water to 55,000 people and are used to irrigate over 2,000 acres of crops.  Mr. Wright's statement in Paragraph 21 lacks foundation[4] and personal knowledge and is inadmissible.  Fed. R. Evid. 602. This paragraph should be stricken.

g.  Paragraph 22

Mr. Wright's statement in Paragraph 22 describes the Tribes' use of some land near Howard Mountain for temporary COVID quarantine housing.  This statement lacks foundation

---

[4] Although Mr. Wright fails to provide an explanation for the foundation to Paragraph 21, it seems to be an incomplete excerpt from the Map Finding Summary in Appendix J of the FEIS, which is part of the Summary Details for May 5, 1989 conditions. (AR0030221). Mr. Wright seems to be implying that the Don Plant has the potential to pollute groundwater for around 55,000 people, which is flatly contradicted by the technical documents.  *See*  Koulermos Dec., FN 2.

and is not relevant to BLM's decision as it refers to property currently owned by the Tribes and does not relate to the land that was exchanged.  That some unaffected property somewhere near Howard Mountain had COVID housing is not admissible because there is no showing of relevance to the present case.  *See* Fed. R. Evid. 602, 402.  Additionally, this paragraph is seeking to introduce evidence outside of the Administrative Record. This paragraph should be stricken.

> h.   Paragraph 23

In Paragraph 23, the Wright Declaration states that "[e]xpanding the gypstack will adversely impact the Tribes' ability to…plan effectively for the health and well-being of the Tribal membership."  This is a mere opinion or a composition of others' opinions, without any supporting facts.  The statement is vague, an argumentative conclusion, and based upon hearsay.  *See* Fed. R. Evid. 602, 403, 802.  This paragraph should be stricken.

> i.   Paragraph 24

Mr. Wright's statement in Paragraph 24 states that expanding the gypsum stack, which will extend the operating life of the Don Plant, threatens, and adversely impacts the Tribes' health and welfare, economic security and political integrity due to enhanced risks to groundwater, air and other pollutants.  This statement lacks foundation, personal knowledge, or expertise, is overly vague, inaccurate, conclusory, and speculative.  As such, the statement is inadmissible and should be stricken.  *See* Fed. R. Evid. 402, 602, 403, 802.  Additionally, this statement finds no support in the Administrative Record. *See* Koulermos and Prouty Decs.

> j.   Paragraph 26

In Paragraph 26, the Wright Declaration states that the Don Plant is a continuing source of chemical and radiological contamination into the ecosystem impacting the Reservation.  This statement lacks foundation, and competence, and is based upon hearsay.  This statement is merely

a sweeping generalization of what Mr. Wright *believes* about the entire range of issues in groundwater, surface water, air, and all contaminants therein.  It is not factual. (*See* Koulermos Dec. at 9-12).  Moreover, if it purports to be factual, no foundation is provided, nor any competence supported to comment upon the Don Plant as a "continuing source."  This paragraph is inadmissible evidence and should be stricken.  *See* Fed. R. Evid. 602, 802.

k.  Paragraph 27

Simplot asserts the same objections as found in Paragraph 26. This paragraph should be stricken.

l.  Paragraph 28

In Paragraph 28, Mr. Wright states that although the gypsum stack is lined, "a significant amount of arsenic, sulfate, phosphorous, and other contamination bypasses the containment system and flows through groundwater into the Portneuf River onto the Reservation."  Mr. Wright's statement lacks foundation, competence, and personal knowledge, and is based upon hearsay.  Mr. Wright provides a non-factual and non-technical conclusion about how the lined gypsum stack performs.  No environmental analysis is provided by Wright to support his conclusion.  Without facts like a study, personal observations, measurements, or expert reports, this paragraph is merely unsupported hearsay stated with no showing of competence or foundation and is therefore inadmissible.  *See* Fed. R. Evid. 602, 403, 802.  This paragraph should be stricken.  (In fact, there are not "significant" (vague and undefined by Wright) contaminants flowing directly into the Portneuf River by "bypassing" the containment system.  *See* Koulermos Dec. at ¶¶ 13-14.)

m.  Paragraph 29

In Paragraph 29, the Wright Declaration refers to a Groundwater/Surface Water Remedy 2019 Annual Report for the Don Plant, apparently in an attempt to imply that the gypsum stack

lining and groundwater extraction has not effectively reduced contaminants; however, Mr. Wright's statement lacks any foundation or competence. The Administrative Record and the report are the best evidence of their contents, and any recitation out of context by Mr. Wright should not be relied upon as a basis for undermining BLM's sound conclusion. This paragraph should be stricken.  (In fact, the lining of the gypsum stack has effectively reduced contaminants, and the extraction system is operating as designed.  *See* Koulermos Dec. at ¶¶ 13-14.)

    n.   Paragraphs 30-31

Paragraphs 30 and 31 of the Wright Declaration improperly pertain to excerpts of reports outside the timeframe of the ROD. The Tribes never tried to supplement the Administrative Record to include these reports.  Further, Simplot asserts the same objections as found in Paragraph 29 and again refers the Court to the Koulermos Dec. at ¶¶ 13-14.  These paragraphs should be stricken.

    o.   Paragraph 32

In Paragraph 32, Mr. Wright states the expansion of the gypsum stack and cooling ponds, and continued operation of the Don Plant are expected to result in increased contaminants flowing off-site.  The statement is conclusory, lacks personal knowledge and foundation, and is based upon hearsay, as presumably, Mr. Wright is conveying something that someone told him.  He states that expansion is "expected to result in increased concentrations of…."  Stated in the passive voice (and not his own), the Court does not know who expects these concentrations to increase or on what basis.   This statement goes far beyond an attempt to establish standing and is simply Mr. Wright's unsupported opinion.  These issues are necessarily scientific with specifics as to each contaminant and must be based upon actual monitoring, reliable modeling, or other observable and valid facts. *Id.*  This paragraph provides nothing other than an unsupported conveyance of others' beliefs without any foundation and is inadmissible pursuant to Fed. R. Evid. 602 and 802. As such,

this paragraph should be stricken. (Additionally, this statement is not supported by the Administrative Record. *See* Koulermos Dec. at ¶ 28.)

 

      p.  Paragraph 33

In Paragraph 33, Mr. Wright states the Tribes rely on the Portneuf River for fishing, hunting, and gathering, and without evidence or foundation, argues these areas are being contaminated by damage to the Portneuf River and connected groundwater resources.  Simplot asserts the same evidentiary objections as found in Paragraph 32.  This paragraph should be stricken.  *See also* Koulermos Dec. at ¶¶ 11-15.

      q.  Paragraph 34

In Paragraph 34, the Wright Declaration makes various statements about the Don Plant's fluoride emissions and the impact on surrounding tribal, private and federal lands as well as nearby livestock.  Mr. Wright's statements here lack foundation and are not based on personal knowledge.  The paragraph states that Don Plant has exceeded Idaho's regulatory standard for air emissions and that the   exceedances "result" in fluoride in flora and cows being affected thereby.  This paragraph consists of hearsay, lacks foundation and confusing.  It is not admissible for a summary judgment determination.  *See* Fed. R. Evid. 802, 602, 402, 403.  This paragraph should be stricken in its entirety.  (Also, these statements are inaccurate as provided in the Prouty Dec. at ¶¶  3-4).

      r.  Paragraphs 35-36

Mr. Wright's statements here are not relevant and should be stricken in accordance with Fed. R. Evid. 402.  These paragraphs simply reference and attach as an exhibit, letters regarding fluoride exceedances.  There is no attempt to demonstrate that they bear upon standing or actual

injury to the Tribes from the BLM's decision.[5]  (One of the letters is 14 years old.) Moreover, the letters are outside the scope of the Administrative Record, and again, no effort is made by Plaintiff to assert the letters fall within an applicable exception to extra-record materials.  For these reasons, these paragraphs and Exhibits 3 and 4 should be stricken and not relied upon.  (Again, these paragraphs are contradicted by EPA's studies and conclusions. *See* Prouty Declaration at 16.)

s.  Paragraph 37

Paragraph 37 of Wright's declaration is not relevant to standing.  Mr. Wright's statements that the EPA concluded over ten years ago that cadmium, radium, and fluoride needed further study is of no import, and the Tribes do not reference this paragraph or the EPA 2015 EMF Superfund Site Five-Year Review Report in their argument.  As such, this paragraph should be stricken.  Further, the selected excerpt is incomplete and misleading. *See* Prouty Dec. at ¶ 5-6.

t.  Paragraph 38

Simplot asserts the same objections as found in Paragraph 37. This paragraph should be stricken.  Additionally, Paragraph 38 refers to and attaches Exhibit 5, which Plaintiff states is a copy of the Second Five-Year Review Report.   (It is actually excerpts from the report, which are misleading and out of context. *See* Prouty Dec. at ¶ 5-6.)  Further, the excerpts post-date the ROD and therefore, the exhibit is not within the Administrative Record.  Plaintiff fails to fulfill its burden of establishing an applicable exception justifying the Court's review of the extra-record materials, and as such, the paragraph and exhibit should be stricken. 5 U.S.C. § 706; *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).

u.  Paragraph 39

In Paragraph 39, Mr. Wright states that the Tribes were not consulted or given a chance to

---

[5] To the contrary, the BLM's decision facilitates actions to lower fluoride emissions. *See* Prouty Dec. at ¶ 16 and AR0029605.

comment on a draft of the Second Five-Year Review Report.  That the Tribes were not consulted about the draft of the Second Five-Year Review Report by the EPA, as allegedly required by some uncited regulation, is not germane to establishing standing.   Nor do the Tribes reference this study or EPA's failures in their argument.  Further, the statement is made without explanation for its foundation and appears to be based on hearsay.  This paragraph should be stricken.

     v.   Paragraph 40

Mr. Wright's statements in Paragraph 40 are not relevant pursuant to Fed. R. Evid. 402, and they lack personal knowledge in violation of Fed. R. Evid. 602.  EPA's alleged failures are not at issue – nor do the Tribes argue that EPA's failures are linked in any way to their standing in this case.  For these reasons, this paragraph should be stricken. Additionally, these statements are misleading. *See* Prouty Dec. at ¶ 6.  EPA reviewed the data and updated human health risk assessment (including Native American Risk Scenario) to delineate where institutional controls were required.

     Paragraph 41

Simplot asserts the same objections, in as found in Paragraph 40 and directs the Court to the Prouty Dec. at ¶ 7-12.  This paragraph should be stricken.

     w.   Paragraph 42

Mr. Wright's statements here lack foundation, competence, and personal knowledge.  The Tribes do not rely upon this opinion, vague as it is, to establish any injury from BLM's lawful decision to authorize the land exchange. As such, this paragraph constitutes inadmissible evidence and should be stricken. Additionally, it too is inaccurate. *See* Prouty Declaration at 13-16.

     x.   Paragraph 43

In Paragraph 43, the Wright Declaration states that the Tribes remain concerned by the

harms caused by pollutants from the Don Plant's ongoing operations, the gypsum stack expansion and the alleged lack of sampling data.  Mr. Wright's statements here are based on hearsay, lack foundation, are vague and unsupported opinions, and are speculatory and should not be considered as part of the Court's evaluation of BLM's decision.   This paragraph purports to convey generalized "concerns" by the Tribes by relying on hearsay.  Mr. Wright fails to identify what emissions he is referring to, the applicable standards, or any proper basis for his conclusion, nor does he specify what sampling data is missing.  This paragraph constitutes inadmissible hearsay lacking foundation and personal knowledge and should be stricken.   *See also* Prouty Dec. at ¶¶ 13-18.

    y.  Paragraphs 44-46

In Paragraphs 44-46, Mr. Wright refers to attached fluoride in forage reports.  Mr. Wright's statements here are not relevant, lack foundation, and lack competence.  Mr. Wright fails to establish that these reports are relevant to the Tribes' claims or injury in fact, which is evident because the Tribes never refer to them in their argument.  These paragraphs are inadmissible and should be stricken.  Further, these matters were not considered by the agency in the administrative record, and as such, Exhibits 6 through 8 are extra-record materials that should not be considered by the Court. 5 U.S.C. § 706; *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).

    z.  Paragraph 47

This paragraph recites alleged RCRA violations from a 2007 EPA letter.  Then, it concludes that the violations (including violations involving lack of permits and other considerations for this APA appeal) "have not been fully addressed or resolved…"  There is no attempt to explain the basis for this argumentative conclusion, relevance to standing, nor any

showing of the competence of Mr. Wright to so conclude.  The vague and overbroad claim of a lack of resolution is completely unsupported by any personal knowledge or facts of any kind. Mr. Wright's statements here are inadmissible as they lack foundation, competence, and personal knowledge, are conclusory arguments rather than facts, and are mere speculation.  This paragraph should be stricken.

      aa.  Paragraph 48

Paragraph 48 refers to and attaches Exhibit 9, which is an undated copy of the Tribes comments to the EPA.  The Court should strike Exhibit 9, as it is outside of the administrative record and does not fall within any applicable extra-record exception (nor is any exception asserted). 5 U.S.C. § 706; *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). Further, the statements in paragraph 48 and Exhibit 9 are irrelevant and inadmissible pursuant to Fed. R. Evid. 402.  The Tribes' comments to the EPA about outstanding concerns – largely directed at the EPA – and Mr. Wright's interpretation of the same did not establish the relevance to this case and therefore are not admissible.  This paragraph should be stricken.

      bb. Paragraph 49

Likewise, Paragraph 49 refers to and attaches an exhibit, exhibit 10, which is outside of the Administrative Record and should not be considered. 5 U.S.C. § 706; *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  Exhibit 10 contains EPA comments on Idaho Department of Environmental Quality rulemaking discussions on phosphoric acid facilities in the State of Idaho.  Such comments and Mr. Wright's interpretation of the same did not establish relevance to the issues in this case and is therefore not admissible.  For these reasons, the paragraph and Exhibit 10 should be stricken.

cc. Paragraph 51

Mr. Wright's statements in Paragraph 51 consist of mere argument beyond personal knowledge pertaining to "an entirely new preferred alternative" in the FEIS.  This issue was considered in the FEIS and is argued in the Tribes' supporting memorandum.  These statements are not relevant to standing as they do not draw a connection to any injury, or facts – only legal argument based on the alleged failure to consider the preferred alternative by BLM in the NEPA process and the allegation that the Tribes were not provided an opportunity to comment (a statement made without foundation and one that is not accurate as explained in the Koulermos Dec. at FN 17).  As such, this paragraph is inadmissible pursuant to Fed. R. Evid. 602 and should be stricken.  *See also Anhing Corp v. Thaun Phong Company Ltd.*, 215 F.Supp. 3d 919, 928 (C.D. Cal. 2015) (excluding declaration that lacked personal knowledge, was argumentative and amounted to impermissible lay opinion testimony as declaration in support of summary judgment must be based on personal knowledge and facts admissible as evidence).

dd. Paragraph 52

In Paragraph 52, the Wright Declaration states, in part, that the Tribes are concerned that the "BLM went ahead and approved the land exchange despite a lack of groundwater data available for the new gypsum stack configuration."  Mr. Wright's statements are argumentative and conclusory without factual basis[6], lack competence, foundation, and personal knowledge, and are based on hearsay.  The claim by Mr. Wright that the FEIS did not "properly evaluate" groundwater impacts is a mere argumentative conclusion and not admissible without the foundation for such an opinion. His statement that the Tribes are concerned about a lack of groundwater data lacks

---

[6] In fact, the groundwater and surface water conditions at the site are well defined and understood, as a result of an extensive groundwater and surface monitoring program, which has been in place at the plant for 25 years.  *See* Koulermos Dec.  *See also* Appendix H to the FEIS, which provides a detailed discussion of modeling and analysis. AR0029944.

MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO STRIKE THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL - 17

foundation.  For all these reasons, this paragraph should be stricken as inadmissible evidence.  *See also* Koulermos Dec. at ¶ 17.

ee.  Paragraph 53

In Paragraph 53, Mr. Wright states that the alternative moved the source of fluoride and particulate matter emissions closer to residences east of the Don Plant and the new location "could" result in higher concentrations of fluoride.  A witness may not simply speculate about possibilities.  Mr. Wright has neither personal knowledge, nor scientific, specialized, or technical knowledge on the subject.  His testimony is not admissible.  *See* Fed. R. Evid. 602, 701.  As such, this paragraph should be stricken.  Further, this statement is not accurate (Prouty Dec. at ¶ 15).

ff.  Paragraph 54

In Paragraph 54, Wright provides a recitation of what the Tribes expressed during the NEPA process and a statement that the BLM did not include provisions to ensure that Simplot developed the gypsum stack as described in the DEIS or FEIS.  Mr. Wright's statements here lack personal knowledge and foundation, are not relevant, and are argumentative.  Because they constitute inadmissible evidence, they should be stricken. *See also* Prouty Dec. at ¶¶ 16-21.

gg. Paragraph 55

In Paragraph 55, the Wright Declaration asserts that the Tribes were not informed of Simplot's plans to expand the gypsum stack and build cooling ponds at the time Simplot informed the EPA and IDEQ in April of 2021 (which is after the ROD and not part of the administrative record subject to review).  Design and construction of new gypstacks in Idaho is regulated by Sections 39-176A – 39-176F of Idaho Code.  The Tribes don't have regulatory authority regarding design and construction of gypsum tacks in Idaho. Also, Wright provides no indication of foundation or personal knowledge for making this statement and it appears to be based on hearsay.

For all of these reasons, this paragraph should be stricken.

hh. Paragraph 56

In Paragraph 56, Mr. Wright states that Simplot intends to locate the cooling ponds in a new location not disclosed in the EIS and that the environmental impacts were not evaluated in the NEPA process and now the Tribes are concerned.  Again, Wright does not provide any foundation for this statement such as technical information that a change in location changes emissions or somehow affects ambient impacts.  It is difficult to discern how this paragraph is relevant to standing. This paragraph should be stricken.  *See also* Koulermos Dec., FN 6 and AR0029578-9.

ii.   Paragraph 58

This paragraph is a quotation from a document associated with installing additional monitoring wells as required by the CERCLA and the State of Idaho 2008 VCO for an expansion of the gypsum stack.  Mr. Wright makes no effort to discuss this quote in context from the source document, interpret, or show its relevance to standing.  The document should not be considered.

jj.   Paragraph 59

In Paragraph 59, the Wright Declaration continues to express that "[t]he Tribes remain concerned about these uncertainties in the area where Simplot has stated its intention to expand the gypsum stack" and "are concerned about the impacts of the land exchange" without sufficient data.   As an initial matter, there is extensive data used to understand the environmental baseline and impacts of this decision (*see* Koulermos Dec. at ¶ 19).  Moreover, Wright's statements in this paragraph are hearsay, and this paragraph should be stricken.  *See* Fed. R. Evid. 802.

2.  **Small Declaration:**

a.   Paragraphs 9-10

In Paragraphs 9-10, the Small Declaration states that the "land and its landscape area

include likely burial sites, as well as known spiritual sites, waterways, spring sites, archaeological sites, campsites, trails, healing locations, battlegrounds, and hunting, fishing and gathering locations" which the Tribes have lost the ability to use and enjoy.  In Paragraph 9, Mr. Small states that the Tribes hunted on the land before the exchange.     Further, Mr. Small's statement in Paragraph 9 is not relevant as it references things that are "likely" to make the land meaningful (without any explanation or foundation) and expands the statement beyond the subject land to the "landscape area".  It is not clear how Small knows the Tribes used, or likely used, the land (or land nearby) for these purposes and when, or what reference Small has for that information.  As such, these paragraphs are inadmissible evidence as they lack foundation, go beyond the administrative record, and should be stricken.

    b.  Paragraphs 11-12

     In Paragraph 11, the Small Declaration states that Howard Mountain and its canyon area is a significant cultural site to the Tribes and relays that a Tribal elder interviewed in the 1970s stated that the mountains above Pocatello were valuable for the development of songs for the Tribal people.

     In Paragraph 12, the Small Declaration states that historically, the Tribes placed deceased individuals in rock features, and in 2014, bone fragments were found within one mile of the land exchanged with Simplot, noting that others believe rock crevices "in the area of the land exchange" could also have been used as burial sites.[7]

     Both Paragraphs 11 and 12 lack the necessary foundation for admissibility pursuant to Fed. R. Evid. 602.  Mr. Small is not providing the testimony based on his personal knowledge but rather, based on inadmissible hearsay pursuant to Fed. R. Evid. 802.  Additionally, the testimony is not

relevant to standing since it pertains to the general area around the exchanged land.[8]  As such, these paragraphs should be stricken.  (Of note, Paragraph 12 is inconsistent with the extensive cultural surveys of the former federal lands which showed no documented or recorded burial sites. *See* AR0030057).

c.   Paragraph 13

In Paragraph 13, Mr. Small states that the new cooling ponds will destroy resources around the area of the exchange including the integrity of the landscape.  Setting aside the inaccuracy of the statement, see the objections expressed above in response to Paragraphs 11 and 12.

d.   Paragraphs 14-15

In Paragraph 14, the Small Declaration expresses concern that the "continued operation and expansion" of the Don Plant will "increase the damage already being caused to cultural resources on and off the Fort Hall Reservation."  Paragraph 15 states that Tribal members rely on the Portneuf River to hunt, fish, gather and bathe but notes that "[m]any Tribal members have stopped relying as much on the Portneuf River for subsistence fishing and no longer gather plants and medicines in that area because of historic and ongoing contamination from the Simplot Don Plant, as well as from the now-closed FMC plant…."

Mr. Small's declaration lacks foundation for these statements. Fed. R. Evid. 602.  These statements are not based on Mr. Small's own knowledge but rather based on inadmissible hearsay.  Additionally, these very general and unsupported descriptions are not relevant to standing, as they relate to actions tribal members ceased *prior* to the land exchange, allegedly "as a result of contamination from the Don Plant and the now-closed FMC plant."  In other words, Mr. Small's

---

[8] *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, *887-888, 110 S. Ct. 3177, *3186, 111 L.Ed. 2d 695 (1990) (it is insufficient if the witness providing an affidavit to support standing asserts bare allegations of injury and/or uses in the vicinity of the subject land).

statement fails to provide a connection between the alleged injury and the conduct complained of (the land exchange), as the injury must be fairly traceable to the challenged action of the defendant for standing.  As such, the statements should be stricken.  Moreover, these statements are not supported by the Administrative Record.  *See* Koulermos Dec. at ¶¶ 14, 18, 20, 21 and Prouty Dec. at ¶¶ 6, 9, 16, and 20.

> e.  Paragraphs 16

See the objections articulated in response to paragraphs 14 and 15 above.

> f.  Paragraph 17

Mr. Small is not qualified as a witness to testify to the alleged groundwater contamination.  This statement lacks foundation, personal knowledge or expertise, and is overly vague.   As such, the statement is inadmissible evidence and should be stricken.  *See* Fed. R. Evid. 402, 602, 403, 802.  The inaccuracy of Mr. Small's statements in paragraph 17 is separately addressed in the Koulermos Dec..

### III.    CONCLUSION

The Wright and Small Declarations improperly attempt to introduce a massive amount of information outside the Administrative Record and should not be allowed as a collateral attack on the BLM's reasoned decision. Additionally, the statements and materials specifically noted above would be inadmissible in evidence and should be stricken.

DATED this 17th day of August 2022.

    /s/ Steven B. Andersen
Steven B. Andersen
KIRTON MCCONKIE
Attorneys for Defendant-Intervenor J.R.
Simplot Company

MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO STRIKE THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL - 22

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 17th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Paul C. Echo Hawk | paul@echohawklaw.com |
| William F. Bacon | bbacon@sbtribes.com |
| Devon Lehman McCune | devon.mccune@usdoj.gov |

       */s/ Steven B. Andersen*
       Steven B. Andersen