Paul C. Echo Hawk (ISB # 5802)
ECHO HAWK LAW OFFICE
P.O. Box 4166
Pocatello, Idaho 83205
Telephone: (208) 705-9503
Facsimile: (208) 904-3878
paul@echohawklaw.com

William F. Bacon, General Counsel (ISB # 2766)
P.O. Box 306
Fort Hall, Idaho 83203
Telephone: (208) 478-3822
Facsimile: (208) 237-9736
SHOSHONE-BANNOCK TRIBES
bbacon@sbtribes.com

Jill E. Grant (DCB #358306) (*pro hac vice*)
Andrea E. Gelatt (CAB #262617) (*pro hac vice*)
JILL GRANT & ASSOCIATES, LLC
1319 F Street, NW
Washington, D.C. 20004
Telephone: (202) 821-1950
Facsimile: (202) 459-9558
jgrant@jillgrantlaw.com

*Attorneys for the Shoshone-Bannock Tribes*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION, | ) ) ) | Case No. 4:20-cv-00553 |
| Plaintiff, | ) ) | |
| v. | ) ) | **PLAINTIFF SHOSHONE-BANNOCK TRIBES'** |
| LAURA DANIEL-DAVIS, Principal Deputy Assistant Secretary for Land and Mineral Management, *et al*, | ) ) ) ) | **OPPOSITION TO MOTION TO STRIKE THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL [ECF No. 59]** |
| Defendants, | ) ) | |
| and | ) ) | |
| J.R. SIMPLOT COMPANY | ) ) | |
| Defendant-Intervenor. | ) ) | |

Plaintiff Shoshone-Bannock Tribes (Tribes) submit this memorandum in opposition to the motion to strike filed by Defendant-Intervenor J.R. Simplot Company (Simplot), ECF No. 59.

## INTRODUCTION AND PROCEDURAL HISTORY

Simplot, in the guise of a motion to strike, has continued to submit improper advocacy pieces in an attempt to divert the Court's attention from the legality of the challenged land exchange.[1] Without seeking leave of Court, Simplot submitted, along with its motion, two additional declarations providing extra-record, post-decisional information about its efforts to address contamination from its operations. For the reasons below, the Court should deny Simplot's motion and decline to consider Simplot's declarations.

The Tribes filed this litigation to challenge the August 12, 2020, Blackrock Land Exchange Record of Decision (ROD), issued by the United States Department of the Interior (DOI) and approving a land exchange that will result in the expansion of the Simplot Don Plant phosphogypsum stack (gypstack) located at the Simplot Operating Unit (OU) of the Eastern Michaud Flats (EMF) Superfund site. By expanding the gypstack, the life of the Simplot Don Plant will be extended by an estimated 65 years.[2] The Simplot OU is upgradient of the Fort Hall Reservation, has contaminated the Reservation for decades, and will continue to contaminate it for decades longer because of the land exchange that facilitates the expansion of the gypstack.

From the beginning, the Tribes have stated that they intended to file declarations to support their standing in this case. J. Litig. Plan, ECF No. 23 at 3 ("The Shoshone-Bannock Tribes intend to submit declarations for the purposes of establishing standing, which is standard practice for

---

[1] *See* Mem. Decision & Order, ECF No. 33 at 5, regarding Simplot's motion to consider extra-record documents, discussed below.
[2] *See* Simplot's Mem. in Supp. of Cross-Mot. for Summ. J. at 25 (Simplot SJ Mem.), ECF No. 60-1; Fed. Defs.' Mem. in Supp. Of Cross-Mot. Summ. J. at 33 (Fed. SJ Mem.), ECF No. 61-1.

agency action review cases."). The Tribes submitted the declarations of Kelly Wright and Nathan Small with their summary judgment brief and cited them only to support standing arguments. *See* SBT Mem. in Supp. of Mot. for Summ. J. (SBT Mem.), ECF No. 37-1 at 9; Decl. Kelly Wright (Wright Decl.), ECF No. 37-4; Decl. Nathan Small (Small Decl.), ECF No. 37-17.[3] Simplot and Federal Defendants filed their combined summary judgment response briefs and briefs in support of their Cross-Motions for Summary Judgment in August 2022. In those briefs, neither party seriously contests the Tribes' standing to bring the case. At the same time as filing its merits brief, Simplot filed a Motion to Strike the Tribes' standing declarations and attached their own declarations (the fourth declaration by Alan Prouty that Simplot has submitted in this proceeding, along with one by Andrew Koulermos). *See* ECF No. 59.[4] In several paragraphs of his latest declaration, Alan Prouty quotes and characterizes EPA's Second Five-Year Review Report (2020) and its attachments, which is also attached to the Wright Declaration. *See* Decl. Alan Prouty (Prouty Decl.), ECF No. 59-2 ¶¶ 5-11, 13, 17; Wright Decl., ECF No. 37-9. In places, Prouty reiterates prior declarations. *Compare, e.g.,* ECF No. 59-2 ¶ 18 n.6, *with* ECF No. 6-2 ¶¶ 13-14.

Separately, before summary judgment briefing began, Simplot moved for consideration of extra-record material, including by submitting the first Prouty declaration in support of its motion for intervention. *See* ECF No. 26. As Simplot explained, the first Prouty declaration, ECF No. 6-2, described the "time, energy, and material resources" that Simplot has invested since the Court's decision in *Shoshone-Bannock Tribes v U.S. Dep't of the Interior*, No. 4:10-cv-004-BLW, 2011

---

[3] In their merits brief, the Tribes also cited a letter from the Tribes to BLM dated February 7, 2020, which was attached to the Small Declaration. SBT Mem. at 8, 11. The letter predated the ROD but was not included in the Administrative Record.

[4] Simplot subsequently submitted an amended memorandum in support of its Motion, so for ease of reference all citations to Simplot's memorandum are to the amended version. Simplot Am. Memo. in Supp. Mot. to Strike, ECF No. 64 (Simplot Mem.).

WL 1743656 (D. Idaho May 3, 2011) [*Blackrock I*]." Simplot Mem. in Supp. of Mot. for the Court

to Consider Extra-Record Material, ECF No. 26-1 at 9.[5] The Court denied Simplot's motion to

consider the first Prouty declaration because it was an advocacy document:

> Simply put, [the Prouty declaration] appears to be an advocacy document, with the primary purpose of describing the substantial efforts Simplot has made to comply with prior court orders. In its briefing, Simplot repeatedly offers the conclusion that the Prouty affidavit will assist the Court in dealing with the technical terms and complex subject matter involved in this case. However, it provides no explanation as to how the affidavit will do so.

Order, ECF No. 33 at 5. The Court allowed consideration of Exhibit G to the Prouty declaration,

which included several 2020 EPA reports, "with the caveat that [Exhibit G] cannot be used or cited

to challenge the wisdom of the agency decision at issue in this case." ECF No. 33 at 5 (referring

to ECF No. 6-1, Ex. G). Exhibit G includes Appendices L-N to EPA's Second Five-Year Review

Report.

## ARGUMENT

This Court's standing order notes that motions to strike declarations are disfavored and that

objections should instead be contained within the summary judgment briefing or in a separate

appendix. Simplot's Motion to Strike should be denied as an attempt to evade the Court's page

limits and for failure to comply with the Court's procedures.

The motion should also be denied as moot. No party seriously contests the Tribes' standing:

Federal Defendants have not opposed standing at all and, in its summary judgment brief, Simplot

does not meaningfully do so either. The Tribes challenge a land exchange that will extend the life

of Simplot's Don Plant and the size of the accompanying gypstack, both of which have

contaminated the Tribes' reservation for decades. Regardless of environmental controls or state-

---

[5] Citations to filings in this case refer to the internal pagination of the document.

of-the-art technological fixes, the Don Plant will continue to contaminate the water, air, soils, and vegetation in the area until long after the plant is closed and the area remediated. Standing in this case is not a close question. As explained below, the Tribes have amply shown that they have standing to bring this litigation, even without resolving Simplot's Motion to Strike.

In addition, Simplot's motion is meritless. The Tribes' declarations are submitted to support standing and therefore Simplot's arguments that they should be stricken as extra-record material that does not meet one of the *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (*Lands Council*) exceptions should be rejected.

Simplot's evidentiary arguments about relevance, foundation, and hearsay also fail. The Wright and Small Declarations provide factually supported explanations for the kinds of injuries the Tribes will suffer from the land exchange. The declarations are also made with sufficient foundation and not based on impermissible hearsay. Kelly Wright is the long-standing program manager of the Tribes' Environmental Waste Management Program (EWMP) and supervises that program's activities with respect to the EMF. Nathan Small is the current Chairman of the Fort Hall Business Council and, at the time he submitted his declaration, had served as a Council Member for decades and previously served as Chairman. Given that knowledge base, the Tribes' declarants are more than qualified to provide facts regarding the Tribes' relationship with its Reservation, areas subject to off-reservation treaty rights, ongoing contamination affecting the area in and around the Reservation, and the other subjects of their declarations.

## I.      **Motions to Strike are Strongly Disfavored and Should be Denied.**

Simplot's Motion to Strike did not identify the rule under which Simplot was proceeding. The Federal Rules of Civil Procedure do not provide for striking declarations submitted as part of the summary judgment procedure and, as this Court's procedural order notes, motions to strike are

disfavored and any objections may be contained within the summary judgment briefing or in a

separate appendix. J. Winmill's Mot. Prac.[6] *See also Wolf v. Otter*, No. 1:12-CV-00526-BLW,

2014 WL 2504542, at \*5 (D. Idaho June 3, 2014), *aff'd sub nom. Wolf v. Idaho State Bd. of Corr.*,

772 Fed. Appx. 557 (9th Cir. 2019).

Filing a separate motion to strike allows a party to file additional pages, exceeding the

limitations set for the merits briefing. *See, e.g.*, *TDY Indus., LLC v. BTA Oil Producers, LLC*, No.

2:18-CV-0296-SWS/MLC, 2019 WL 12661227, at \*1 (D.N.M. June 5, 2019) ("The Court is wary

of Defendant's attempt to evade the page limitations and get further briefing on why it believes

the Court should not consider Plaintiff's evidence."). Here, by moving to strike, Simplot provided

itself 20 extra pages and two declarations beyond the briefing limits, *see* Scheduling Order, ECF

No. 24 at 4, rather than including these arguments in its summary judgment brief.[7] The Court

should deny the motion for both of these reasons.[8]

II.    **The Tribes' Declarations were Submitted in Support of Standing and Therefore Extra-Record Materials are Appropriate and Simplot's Arguments regarding Extra-Record Materials are Inapposite.**

As the Tribes explained in the joint litigation plan, ECF No. 23 at 3, the Tribes submitted

the Kelly Wright and Nathan Small declarations in support of their standing arguments, not their

merits arguments. *See* ECF No. 37-1 at 9. For that reason, Simplot's argument that the declarations

---

[6] Available at https://www.id.uscourts.gov/district/judges/winmill/Motion_Practice.cfm (last accessed, Sept. 30, 2022).

[7] It is possible that Simplot made this choice because Simplot does not (and could not) meaningfully contest standing in its merits brief and therefore could not use its summary judgment brief to respond to the Tribes' declarations. Thus, Simplot used another (impermissible) vehicle to attempt to reframe the case.

[8] Simplot also created unnecessary work for the Tribes, who were forced to respond to the motion, with the resulting waste of time, money, and other resources.

PLAINTIFF SHOSHONE-BANNOCK TRIBES' OPPOSITION TO MOTION TO STRIKE
THE DECLARATIONS OF KELLY WRIGHT AND NATHAN SMALL - 6

should be stricken because they are extra-record support for the Tribes' merits arguments entirely

misses the mark.

> **A. The Wright and Small Declarations Are Appropriately Considered for Standing Purposes.**

The parties agree that the Court's review of the ROD and its supporting documentation is

limited to the administrative record and any documents that satisfy the exceptions in *Lands*

*Council. See* Simplot Mem. at 4; J. Litig. Plan, ECF No. 23 at 2-3. They also acknowledge that it

is a plaintiff's burden to establish standing. ECF No. 23 at 3. As courts have explained, unless

standing is self-evident, a plaintiff "*must* supplement the record to the extent necessary to explain

and substantiate its entitlement to judicial review." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C.

Cir. 2002) (emphasis added); *see also Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d

1520, 1528 (9th Cir. 1997). Standing does not go to the merits of the agency's decision-making

and thus standing declarations do not need to meet the *Lands Council* exceptions to be considered.

*Nw. Envt Def. Ctr.*, 117 F.3d at 1527. For this reason, the Court may reject Simplot's arguments

that the declarations are improper extra-record information.

Moreover, the Tribes made a sufficient showing of standing that neither the Federal

Defendants nor Simplot seriously contests in their merits briefing.[9] The Tribes based their showing

on the impacts that the land exchange will have on human health, the reservation environment, and

---

[9] Simplot does not contest the Tribes' standing in the argument sections of its merits brief. *See* Fed. SJ Mem. at 9 n.1. (noting that no party contests standing). However, it suggests in a footnote addressing the appropriate remedy that "the Tribes have not met their burden to establish that the injuries of which they complain in their standing declarations are redressable by this Court." *See* Simplot SJ Mem. at 48 n.20. Federal Defendants do not join this argument, which in any event is incorrect. The Tribes do not seek an "extraordinary remedy," *id.* at 48; on the contrary, it is settled law that a court can order relief to unwind the harmful aspects of an unlawful land exchange. *See, e.g., Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 814 (9th Cir. 1999).

off-reservation treaty rights by increasing and prolonging the ongoing pollution from the Simplot

Don Plant. SBT Mem. at 9.[10]

> **B. The Court May Deny Simplot's Motion to Strike as Moot Because the Tribes Have Demonstrated Their Standing to Bring This Litigation Based on Uncontested Statements of Fact.**

The Tribes easily clear the legal hurdle for standing based on the uncontested portions of

the Wright and Small declarations and uncontested statements of fact. There is therefore no need

for the Court to address Simplot's Motion to Strike.

To satisfy the requirements of Article III standing, a plaintiff must have suffered an injury

in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by a

favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167,

180-81 (2000). Future injuries are sufficient if "threatened injury is certainly impending, or there

is a substantial risk that the harm will occur." *Dep't of Com. v. New York*, -- U.S. --, 139 S. Ct.

2551, 2565 (2019). Injuries to aesthetic values also are cognizable for Article III purposes.

*Washington Env't Council v. Bellon*, 732 F.3d 1131, 1140 (9th Cir. 2013).[11]

Simplot does not object to key paragraphs of the Wright and Small Declarations that

support the Tribes' standing. For example, it does not object to the following: "[t]he construction

of the cooling ponds and an expanded gypsum stack on the federal land also would alter the

---

[10] The Tribes previously challenged a land swap involving very similar parcels and the same parties, and standing was not challenged. *See generally Blackrock I.*

[11] In addition, the U.S. Supreme Court recently explained that courts must "hold the government to its word" in enforcing treaty promises. *See McGirt v. Oklahoma*, -- U.S. --, 140 S. Ct. 2452, 2459 (2020). Although no court has so held, an alleged breach of a tribe's treaty rights threatens a concrete injury to a tribe. *Cf. Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 989 (9th Cir. 2020) (holding that an asserted infringement on tribal sovereignty "is sufficiently concrete, particularized, and imminent to show injury in fact"), *cert. denied sub nom. Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty., Washington*, 141 S. Ct. 2464, 209 L. Ed. 2d 528 (2021).

existing visual character of the mountainside, which is surrounded by undeveloped lands to the west, south, and east of the federal land." Wright Decl. ¶ 25; *see* Simplot Mem. at 8 (no argument concerning Wright Decl. ¶ 25). As the BLM explains in its Final Environmental Impact Statement (FEIS), "[t]he Tribes place great intrinsic value on the Howard Mountain area and the Federal lands offered for exchange. The Tribes value the area for its uniqueness and the relation their people have with the natural surroundings." FEIS at 3-23 (AR0029616). Simplot also does not object to Chairman Small's statement that "[t[he Tribes consider the area as a whole to be a significant traditional cultural landscape that provides a valuable picture of the Tribes' ancestral relationship to the area." Small Decl. ¶ 8; *see* Simplot Mem. at 19-20 (no argument concerning Small Decl. ¶ 8). The admitted visual impacts to the Tribes' valued places are alone sufficient to establish a cognizable injury for Article III purposes.

Simplot also does not meaningfully contest key facts submitted as part of the Tribes' Statement of Material Facts, ECF No. 37-3, that support standing. Defendants do not object to the Tribes' statement that areas to be affected by Simplot's construction of the cooling ponds and expanded gypstack are important for subsistence fishing and cultural practices. For example, no party objects to the following statements:

- "[t]he Tribes rely on the [Portneuf] river and the Fort Hall Bottoms for subsistence fishing, hunting, and gathering. The area is also vital to the Tribes' historical cultural practices, including the Sundance." *See* Tribes' Statements of Fact ¶ 3, Fed. Defs.' Resp. Tribes' Statements of Fact ¶ 3; Simplot Resp. to Tribes' Statement of Fact ¶ 3.[12]

- "The Fort Hall Reservation is adjacent to, and downgradient from, the lands on Howard Mountain and the EMF Site [which contains the Don Plant and its gypstack]." Tribes'

---

[12] Defendants also do not object the following statement: "The Tribes maintain and practice their Treaty rights on the current Reservation, the ceded lands, aboriginal territory, and unoccupied lands of the United States." *See* Tribes' Statements of Fact, ECF No. 37-3 ¶ 4, Fed. Defs.' Resp. Tribes' Statements of Fact, ECF No. 63-1 ¶ 4; Simplot Resp. to Tribes' Statement of Fact, ECF No. 62 ¶ 4.

Statements of Fact ¶ 7, Fed. Defs.' Resp. Tribes' Statements of Fact ¶ 7 (not disputing the quoted sentences); Simplot Resp. to Tribes' Statement of Fact ¶ 7 (same).

Simplot admits that the gypstack contains chemicals known to have adverse impacts to air, land, water, and human health, and that the phosphogypsum waste produced by the plant and stored in the gypstack contains arsenic, sulfate, phosphorous, radioactive components, and other contaminants. *See* Wright Decl. ¶ 17; Simplot Mem. at 6 (no argument concerning paragraph 17). Moreover, all parties agree that the Tribes lost areas in the exchange where they previously exercised their off-reservation treaty rights: "the federal lands transferred to Simplot in the challenged land exchange are within the Tribes' aboriginal homelands as set forth in the 1868 Fort Bridger Treaty." Tribes' Statements of Fact ¶ 7, Fed. Defs.' Resp. to Tribes' Statement of Fact ¶ 7 (not disputing the quoted sentences in paragraph 7); Simplot Resp. to Tribes' Statement of Fact ¶ 7 (same).[13]

The foregoing uncontested facts sufficiently establish the Tribes' injuries, which are redressable by a favorable order on the Tribes' claims. The Court should therefore deny the Motion to Strike as moot and move to the merits of this case.

III.   **Simplot's Evidentiary Arguments as to Relevance are Misplaced because the Declarations address the Key Prongs of Standing, including the Tribes' Showing of Injury from Simplot's Operations and of Additional Injury from the Land Exchange, which will Add to the Pollutant Load and Allow Simplot's Operations to Continue.**

Standing requires a showing of concrete and imminent injury. A plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by a favorable decision. *Friends of the Earth*, 528 U.S. at 180-81. A procedural injury resulting from a governmental failure to provide required processes that, if followed, could have

---

[13] As Federal Defendants straightforwardly acknowledge in their summary judgment brief, "the Tribes' off-reservation treaty right will be impacted." Fed. Mem. at 27-28.

protected against a concrete injury can also form the basis for standing. *See Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1081 (9th Cir. 2015) (finding a concrete injury based on the government's failure to reinitiate consultation under the Endangered Species Act) (citing *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1179 (9th Cir. 2011)). Declaration testimony about a plaintiff's concrete injuries from a defendant's activities is relevant to the standing inquiry. *See, e.g.*, *Cantrell v. City of Long Beach*, 241 F.3d 674, 680 (9th Cir. 2001) ("The birdwatchers' averments that they had visited the affected area in the past and that the defendant's challenged activity would impede their ability to appreciate and use the specified area are sufficient to establish that they have suffered an injury to a concrete and particularized interest.").

The Tribes' declarations provide evidence that is relevant to the Tribes' standing. They therefore satisfy the evidentiary standard applicable to declarations submitted in support of a summary judgment motion. Federal Rule of Civil Procedure Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affidavit or declarant is competent to testify on the matters stated." *See Am. Fed'n of Musicians of United States & Can. v. Paramount Pictures Corp.*, 903 F.3d 968, 976–77 (9th Cir. 2018).

The Wright and Small declarations meet both the standing requirement to provide facts attesting to the Tribes' injuries, discussed in Part A below, and the evidentiary requirements of Fed. R. Civ. P. 56(c)(4), in that they are provided by competent declarants based on their personal knowledge, as discussed in Part B below.

## A. Simplot's Arguments as to Relevance Are Misplaced.

Simplot seeks to strike many paragraphs from the Wright and Small declarations on the basis that they are not relevant to the litigation. Because these paragraphs are relevant to the Tribes' standing, Simplot's arguments should be rejected.

For example, Simplot seeks to strike paragraphs in the Wright Declaration that provide a description of the Waste Management Act passed by the Fort Hall Business Council (FHBC), Wright Decl. ¶¶ 15-16, by asserting that the description "goes beyond standing." Simplot Mem. at 6, § II.1.c. That argument should be rejected because the Act itself and the existence of the Tribes' Environmental Waste Management Program that was established under that Act show both the Tribes' concrete interest in the environment and Mr. Wright's responsibility for managing that program, as well as the knowledge, experience, and expertise he has gained from doing so. Wright's discussion of the Tribes' exercise of off-reservation treaty rights, Wright Decl. ¶¶ 19-20, likewise shows the Tribes' concrete interest. Simplot Mem. at 6-7, § II.1.d-e. Wright's description of the use of land near Howard Mountain for temporary COVID housing, Wright Decl. ¶ 22, is also directly relevant to the Tribes' standing, contrary to Simplot's objection. Simplot Mem. at 7-8, § II.1.g. The use of land, including for housing, shows the Tribes' interest in the land, establishing a basis for showing that contamination of the land from Simplot's expanded gypstack and continued operations would cause an injury to the Tribes. Likewise, Simplot's suggestion that statements in Small Decl. ¶¶ 11-12 are not relevant to the Tribes' standing because the statements "pertain to the general area around the exchanged land," Simplot Mem. at 19, § II.2.b, seem to misunderstand that the Tribes' likely injuries from soil, water, and air contamination from the expanded gypstack and cooling ponds will not be confined to the exchanged parcel. Historic contamination patterns and ground and surface water flows have not been so circumscribed.

Simplot's assertions that declaration testimony about previous contamination and regulatory exceedances should be stricken as not relevant are similarly misplaced. *See* Simplot Mem. at 11, 14, §§ II.1.r, z, aa. Despite Simplot's assertions that discussions of fluoride exceedances and Resource Conservation and Recovery Act (RCRA) violations in Wright Decl. paragraphs 35-36, 44-47 have no bearing on standing, they in fact are relevant because Simplot's past actions show the kinds of injuries that the Tribes expect to face going forward. *See Am. Commc'ns Assn. v. Douds*, 339 U.S. 382, 413-14 (1950) (determining that past actions are indicative of future conduct). Meanwhile, contrary to Simplot's objection to Wright Decl. Exhibits 9 and 10, Simplot Mem. at 15, § II.1.bb & cc, they also show that regulations alone have not been enough to prevent harm in the past and most likely will not prevent harm in the future either. Wright Decl. ¶¶ 48-49. These paragraphs also address the broader pattern of injuries that the Tribes reasonably anticipate that they are likely to suffer.

Wright's declaration testimony about the impacts of the Tribes' inability to comment on certain aspects of the FEIS, Wright Decl. ¶¶ 51, 54, is also relevant to the Court's standing inquiry, notwithstanding Simplot's claim that Wright does not "draw a connection to any injury, or facts." Simplot Mem. at 15-16, § II.1.dd; *see also id.* at 17, § II.1.gg. The Ninth Circuit has on several occasions recognized the significance of procedural injuries. *Cottonwood Env't L. Ctr.*, 789 F.3d at 1081. Here, as in those cases, the Tribes' procedural injury is directly relevant to the concrete harms that the Tribes face. As the Wright Declaration notes, "the FEIS selected a new alternative, approved by the ROD, with a significantly larger expansion to the east and south that would increase the surface disturbance area to 273.3 acres." Wright Decl. ¶ 51. Testimony that this new alternative did not go through the full, required NEPA process and will injure the Tribes' treaty interests and land management capacity is relevant to the Tribes' standing.

The rest of Simplot's relevance objections suffer from the same or similar failures to acknowledge the purpose of the declarations. For example, Simplot objects to the relevance of Wright Decl. ¶ 37, which discusses concerns with injuries from fluoride contamination. Simplot Mem. at 12, § II.1.s. Similarly, Simplot in its Mem. at 18, § II.1.kk, objects to Wright Decl. ¶ 59, which discusses Simplot's work plan and the uncertainties it identified with "stratigraphy, groundwater quality and groundwater flow directions," *id.* (quoting Exhibit 12 to Wright Decl.), uncertainties that are clearly relevant to standing because they show that the full breadth of contamination from the facilities is not understood. In short, the Tribes' declarations are relevant to their standing allegations and should be considered in their entirety.

### B. Simplot's Objections as to Foundation Erroneously—and Offensively—Dispute Wright's and Small's Expertise Regarding Their Own Jobs.

Simplot also challenges Chairman Small's and Mr. Wright's personal knowledge, based on Fed. R. Evid. 602. That rule requires that "a witness must have 'personal knowledge of the matter' to which she testifies." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (internal citations and quotations omitted). Both declarations meet this standard. A government official who reviews the Tribes' records and "who testifies on the basis of information acquired through the performance of his or her official duties" meets the standard for personal knowledge "since that person may be deemed competent by the court to testify as to those records." *Ecological Rts. Found. v. U.S. EPA*, 541 F. Supp. 3d 34, 47 (D.D.C. 2021) (collecting cases) (internal quotation marks and citations omitted). This standard applies even if statements concern events that occurred before the declarant became responsible for dealing with the problems relevant to the litigation. *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992), *aff'd*, 995 F.2d 219 (3d Cir. 1993), *vacated* (Jan. 6, 1994), *on*

*reh'g*, 15 F.3d 1230 (3d Cir. 1994), *and opinion reinstated in part*, 15 F.3d 1249 (3d Cir. 1994), *and aff'd in part*, 15 F.3d 1230 (3d Cir. 1994), *and aff'd*, 15 F.3d 1249 (3d Cir. 1994).

Simplot does not object to the description of Wright's extensive experience and role working for the Tribes, which is outlined in the first nine paragraphs of his declaration. Simplot Mem. at 5-6, § II.1.a. Consistent with the caselaw discussed *supra*, this experience forms a solid foundation for Wright's statements about the exchanged lands and other land holdings as well as his knowledge about where Tribal members have hunted and maintained cultural practices and where the contamination from the existing gypstack and intended expansion of that gypstack is or is likely to be found. As the Program Manager of the EWMP, which includes responsibility for activities related to Superfund sites under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as well as sites subject to RCRA, *see* Wright Decl. ¶ 5, Wright has been extensively involved in consultations, technical meetings, and other discussions with EPA regarding contamination issues stemming from the Simplot Don Plant, which is part of the EMF Superfund site listed on the National Priorities List under CERCLA and which also raises issues under RCRA. These meetings and discussions have included Simplot's plans for designing and constructing an expansion to the gypstack that is required for operation of the plant. *See* Wright Decl. ¶¶ 2-3, 5.[14]

In fact, throughout his declaration Wright displays the extensive personal knowledge he has gained working for the Tribes. In Wright's discussion of harms to the Tribes' homeland and

---

[14] Confusingly, Simplot objects to portions of Wright's declaration that it elsewhere admits to be true. For example, it objects on the basis of foundation to Wright's statement that there are public wells within 3 miles of the area that provide drinking water to 55,000 people and irrigate over 2000 acres of crops, Simplot Mem. at 7, § II.1.f, but in a separate filing, Simplot admits that this fact is true. *See* Simplot Resp. to Tribes' Statement of Fact ¶ 12 (not disputing the final sentence of paragraph 12 to the extent it describes the number of wells and their location).

environment, he details his knowledge of the land, the Tribes' interaction with it, and how this land exchange will harm both the land and the Tribes. He further outlines his knowledge of the expanding gypstack and how this expansion will harm the Tribes: "Expanding the gypsum stack will adversely impact the Tribes' ability to offer housing to Tribal members in the Michaud Creek area and to govern and plan effectively for the health and well-being of the Tribal membership." Wright Decl. ¶ 22. Simplot's disagreement with Wright's assertion neglects to address the relevance of such assertions to standing.

Simplot also questions Chairman Small's knowledge of what makes the land meaningful to the Tribes, including the history of the land and cultural sites and artifacts, arguing that Small does not have firsthand knowledge of this information. Simplot Mem. at 18-19, § II.2.a-b. Simplot's questioning of Chairman Small's knowledge is, frankly, astounding. Chairman Small is a Tribal elder who not only serves as Tribal Chairman but has served on the FHBC in one capacity or another for many terms. In all these capacities, Chairman Small would have firsthand knowledge of tribal land, cultural sites, and artifacts.

In any event, Simplot's objections to the Small Declaration fail for the same reasons as their objections to the Wright Declaration fail. As noted above, an affiant may have personal knowledge based on what he or she learns through official duties and would be competent to testify based on that knowledge. *See supra*; *Ecological Rts. Found.*, 541 F. Supp. 3d at 47; *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*, 870 F. Supp. at 1303-04. Chairman Small is qualified both through his own firsthand knowledge as a Tribal member and through knowledge he has obtained in his official duties. Decl. Small ¶ 3. In his official capacity as Tribal Chairman or Council member for much of his adult life, he is responsible for protecting the Tribes' lands and resources. *See, e.g.*, Small Decl. ¶ 4; Constitution for the

Shoshone-Bannock Tribes of the Fort Hall Reservation, Article VI, Sec. 1(a), (c), (l), (q). In addition, Chairman Small hears about these issues from meetings with the Tribal membership. Chairman Small furthermore is frequently briefed on these issues, as well as on environmental issues such as the groundwater contamination Simplot mentions, by the Tribes' technical staff. Small Decl. ¶ 2.

**C. Moreover, the Wright Declaration Relied in Large Part on the Administrative Record and the Attachments to the Wright Declaration may be Judicially Noticed as Government Records and Considered in Support of the Tribes' Standing.**

A court may take judicial notice of "matters of public record that are not subject to reasonable dispute," *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 699 n.6 (9th Cir. 2017), and "records and reports of administrative bodies," *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (internal citations and quotations omitted). Mem. Decision & Order, ECF No. 33 at 6-7 (citing and quoting cases). The attachments to the Wright Declaration are subject to judicial notice because they are government documents or portions thereof. In fact, one of the attachments to Wright's Declaration is EPA's Second Five-Year Report, and the Court has already judicially noticed several of its appendices. *See* ECF No. 33 at 6-7.

In his declaration, Wright accurately cites and refers to judicially noticeable documents that provide additional support for his assertions regarding ongoing air emissions and groundwater contamination, both of which represent a concrete "injury in fact" to the Tribes. Wright provides additional foundation for statements about groundwater contamination in Exhibit 1 to his declaration ("Groundwater/Surface Water Remedy 2020 Annual Report Simplot Don Plant" dated March 2021) and Exhibit 2 ("Third Quarter 2021 Monitoring Report Groundwater/Surface Water Remedy" dated December 2021). These exhibits identify which contaminants are leaking from the gypsum stack and flowing through groundwater into the Portneuf River and onto the Reservation.

Meanwhile, Exhibit 11 (EPA's and IDEQ's June 7, 2021 comments) shows that state and federal government agencies have also identified concerns with groundwater, and Exhibit 12 (Simplot's July 2021 Revised Gypsum Stack Expansion Background and Baseline Monitoring Well Drilling and Installation Work Plan) shows that Simplot identified uncertainties regarding future contamination.

Exhibits 3 through 8 address the issue of air contamination: the Simplot Don Plant has regularly exceeded the State of Idaho's regulatory standard for air emissions of fluoride from industrial stacks at the facility. Wright Decl. ¶ 34. *See* Ex. 3 (September 9, 2016 letters from Monty Johnson, Simplot Interim Environmental Director, to Jannine Jennings, EPA Region 10, and Rick Elkins, Idaho Dept. of Environmental Quality, attaching notices to landowners of fluoride exceedances in forage and a "Fluoride Fact Sheet" explaining symptoms of fluorosis); Ex. 4-5 (December 19, 2008, Letters and Notices of Violation from EPA regarding violations of federally enforceable permit conditions pertaining to fluoride emissions from the Don Plant); Exs. 6-8 (2019-2021 Annual Fluoride in Forage Reports, Simplot Don Plant, J.R. Simplot Company). Exhibit 9 and 10 detail RCRA compliance issues at the Simplot plant, and Exhibits 11 and 12 indicate uncertainties regarding potential future contamination, particularly with respect to groundwater. *See* Wright Decl. Ex. 9 (Tribes' March 11, 2019, comments to EPA regarding the Agency's National Phosphate Compliance Initiative); Ex. 10 (November 13, 2020 EPA comments on Idaho's now vacated Design and Construction of Phosphogypsum Stacks: Docket No. 58-0119-2001, available at www2.deq.idaho.gov/admin/LEIA/ api/document/download/12678); Ex. 12 (Simplot's July 2021 Revised Gypsum Stack Expansion Background and Baseline Monitoring Well Drilling and Installation Work Plan). To the extent the Court would not otherwise be inclined to consider these documents in support of the Tribes' standing, they should be judicially noticed.

IV.     **Simplot's Koulermos and Prouty Declarations are Advocacy Documents Unnecessary to the Court's Consideration of the Tribes' APA Claims and Irrelevant to the Tribes' Standing, and Should Not be Considered as Support for Defendants' Summary Judgment Responses and Cross-Motions.**

A. **The Declarations Should Not Be Considered for the Same Reasons That the Court Struck the First Alan Prouty Declaration.**

Previously in this case, Simplot asked the Court to admit an earlier Prouty declaration that promoted Simplot's efforts to comply with ongoing enforcement to remediate the historical pollution at the Simplot site and to redress contamination from operation of the Don Plant. The Court concluded that the declaration was an advocacy document. *See* Order, ECF No. 33 at 5.

For similar reasons, the Court should decline to consider the new Prouty and Koulermos declarations under the *Lands Council* exceptions for explaining technical terms or complex subject matter. In several paragraphs of his new declaration, Prouty quotes and characterizes EPA's Second Five-Year Review Report (2020) and its attachments, which is a report attached to the Wright Declaration to which, ironically, Simplot objects, Simplot Mem. at 12. *See* Decl. of Alan Prouty, ECF No. 59-2 ¶¶ 5-11, 13 & 17; Wright Decl., ECF No. 37-9. In places, Prouty reiterates one of his prior declarations, despite it having been rejected by the Court. *Compare* ECF No. 59-2 ¶ 18 n.6, *with* ECF No. 6-2 ¶¶ 13-14 (characterizing regulatory requirements). Like the original Prouty declaration, his new declaration and the Koulermos declaration include excerpts and quotes from the administrative record or other government documents, in an attempt to characterize portions of the administrative record for the Court. *See generally* Prouty Decl., Koulermos Decl., ECF Nos. 59-2, 59-3. As the Court noted in its previous order, an extra-record declaration may be included if it assists the Court in explaining technical terms or complex subject matter, but then as now, Simplot "provides no explanation as to how the affidavit will do so." *See* Order, ECF No. 33 at 5.

Simplot previously recognized that its extra-record materials, like the initial Prouty declaration, are not a basis for its opposition to the claims in this lawsuit, which means they are irrelevant to the Court's consideration of the merits. *See* Simplot Reply to Mot. to Consider Decl., ECF No. 30 at 7 n.1 ("it is worth quickly clarifying and confirming that Simplot has never taken the position that the extra-record materials at issue in its Motion are necessary to defend against the Tribes' claims."). Moreover, their declarations are not useful to the Court's consideration of the Tribes' standing. Prouty and Koulermos are not competent to respond to the Tribes' standing-related testimony. They are not qualified to testify about Tribal members' exercise of off-reservation treaty rights, the course of consultation and technical meetings between the Tribes and the relevant government agencies, or how the Tribes are subjectively impacted by ongoing contamination.

## CONCLUSION

For all these reasons, the Court should deny Simplot's Motion to Strike.

Dated this 3rd day of October, 2022.

Respectfully submitted,

 /s/ Paul C. Echo Hawk
Paul C. Echo Hawk

 /s/ Jill E. Grant
Jill Elise Grant

*Attorneys for the Shoshone-Bannock Tribes*