TODD KIM
Assistant Attorney General
DEVON LEHMAN McCUNE, Senior Attorney
Colorado Bar No. 33223
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1487/Fax: (303) 844-1350
Email: Devon.McCune@usdoj.gov
SHANNON BOYLAN, Trial Attorney
D.C. Bar No. 1724269
150 M St. NE, Suite 3.1406
Washington, DC 20044
Tel: (202) 598-9584/Fax: (202) 305-0506
Email: shannon.boylan@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION,<br><br>Plaintiff,<br><br>v.<br><br>LAURA DANIEL-DAVIS, PRINCIPAL DEPUTY ASSISTANT SECRETARY FOR LAND AND MINERALS MANAGEMENT, *et al.*,<br><br>Defendants,<br><br>and<br><br>J.R. SIMPLOT COMPANY,<br><br>Defendant-Intervenor. | Case No.: 4:20-cv-00553-BLW<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL** |

.

# I. INTRODUCTION

On May 19, Defendant-Intervenor J.R. Simplot Company ("Simplot") filed a motion to certify for interlocutory appeal this Court's order on the parties' cross-motions for summary judgment, ECF No. 89 ("Order"). *See* ECF No. 94, 94-1 ("Simplot Mem."). Specifically, Simplot contends that interlocutory appeal is appropriate with respect to this Court's conclusions that: (1) Section 5 of the 1900 Cession Agreement Act ("1900 Act") prohibits the Blackrock Land Exchange ("Exchange"); and (2) the Court's interpretation of the Federal Land Policy and Management Act's ("FLPMA") appraisal requirement. Simplot Mem. 1.

The Court should deny the motion. In the circumstances of this case and in its current procedural posture—with only remedy proceedings remaining—we do not believe that interlocutory appeal would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b)(1), to a sufficient degree to call for interlocutory appeal.

To be sure, Simplot raises important *practical* concerns related to a potential injunction unwinding the Exchange, and potential further disruption if the Ninth Circuit then reverses that injunction following appeal of a final judgment. But those concerns can and should be addressed by this Court in determining the nature and effective date of any remedy, and in whether to stay whatever remedy the Court selects pending any appeal by Simplot and/or the United States. Those concerns, although legitimate, do not warrant an interlocutory appeal.

# II. BACKGROUND

After Simplot intervened and the parties filed competing cross-motions for summary judgment, this Court resolved all claims in its Order, granting summary judgment to Plaintiffs in part, and to Defendants in part. Order at 51. This Court declined to decide appropriate remedies (and thus did not enter an appealable order), but instead directed the parties to confer and submit proposals for briefing that issue. *Id.*

The Court initially held that the Exchange violated the 1900 Act. The Court noted that the statutory language provides that the ceded lands "shall be subject to disposal under the homestead, townsite, stone and timber, and mining laws of the United States *only*." Order at 11 (quoting Act of June 6, 1900, 31 Stat. 672, 76 (Art. I) (1900)) (emphasis supplied by the Court). The Court deemed the statutory language "clear" in mandating that "these types of laws are the exclusive means of lawful disposal." *Id.* at 12. The Court reasoned that because FLPMA is not a homestead, townsite, stone and timber, or mining law, the Exchange does not comply with the 1900 Act. *Id.* The Court cited as further support "the Indian canon of construction, which requires resolving ambiguities in agreements and treaties with tribes in the tribes' favor." *Id.* at 13.

The Court acknowledged that "Congress enacted FLPMA to establish 'uniform procedures for any disposal of public land, acquisition of non-Federal land for public purposes, and the exchange of such lands . . . .'" *Id.* at 16 (quoting 43 U.S.C. § 1701(a)(10)). But the Court deemed compliance with FLPMA necessary but not sufficient given the more "particular restrictions" that the Court held were imposed by the 1900 Act. *Id.* And the Court also acknowledged the "upshot" of its decision: "because Congress has repealed nearly all the homestead, townsite, stone and timber, and mining laws, the federal government does not currently have a viable method for disposing of the ceded lands." *Id.* at 12. The Court described this result as "not absurd," because Congress's choices indicated its "intent to effectively close the door on disposal of the ceded lands." *Id.* at 13. The Court did not address the Tribes' alternative arguments under the 1900 Act—that the Exchange also violated the Act's requirements that no "purchaser" can purchase more than 160 acres of ceded lands and that ceded lands within five miles of Pocatello had to be sold at auction. *Id.* at 12 n.1. And the Court suggested that the only available remedy for the 1900 Act violation was vacating the Exchange, since Interior could in its view not lawfully carry out the

3

Exchange absent Congressional action. But due to the importance of the matter and potential practical difficulties of unwinding the Exchange nearly two and a half years after it was completed, the Court stated that it would consider full briefing before deciding on the appropriate remedy. *Id.* at 17.

This Court further held that Interior's reliance on the appraisal report used for the Exchange was arbitrary and capricious. *Id.* at 22-29. That report had concluded that the highest and best use for the federal land was "continued agriculture and recreational uses, wildlife habitat, watershed, with speculative investment potential," and, based on analysis of recent comparable lands, valued the federal land to be exchanged at $900 per acre. The Court did not find fault with this analysis as a general matter. The Court instead criticized the appraisal report for not considering the conveyed federal land's use for gypstack development in particular. *Id.* at 25. The Court read the Ninth Circuit's prior decisions in *Desert Citizens Against Pollution v. Bission*, 231 F.3d 1172 (9th Cir. 2000), and *National Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058 (9th Cir. 2010), as requiring consideration of Simplot's proposed use of the parcel in particular. Order at 26. The Court acknowledged that the facts here are different than in those cases "because a gypstack is only valuable to Simplot," "[t]here is not a generalized demand for gypstacks," and there are no "other parties competing to build gypstacks on the federal lands." *Id.* at 27. But the Court concluded that the property's "unique" value to Simplot "must be considered in the appraisal because it profoundly affects the most basic underpinnings of market value: supply and demand." *Id.* at 28.

The Court ruled against Defendants on three other issues. First, the Court found inadequate Interior's determination that the public interest would be served by the Exchange. *Id.* at 17-22. The governing regulation contains eight mandatory factors Interior must consider in making this

determination. 43 C.F.R. § 2200.0-6(b). The Court held that Interior had adequately considered these issues, and appropriately analyzed how the Exchange would affect the Tribe's rights under an 1868 Treaty, an 1898 Cession Agreement, and the 1900 Act. Order at 19-20 & n.7. The Court determined, however, that the record of decision ("ROD") for the Exchange did not adequately balance the protection of cultural resources. Although the ROD highlighted that there would be a net gain of 113 acres of land available for exercise of off-reservation tribal treaty rights under the Exchange, the Court faulted Interior for not adequately considering that the newly acquired lands allegedly do not have the same intrinsic value to the Tribes as the former federal lands conveyed to Simplot. *Id.* at 22. The Court also found in favor of the Tribes in part on their National Environmental Policy Act ("NEPA") claim. *Id.* at 32-35. The Court concluded that Interior's analysis was inadequate both because it allegedly refused to consider specific design options, and because the Bureau of Land Management assumed it could rely on effective environmental enforcement from other agencies—an assumption the Court deemed unwarranted. *Id.* at 35. The Court ruled in Defendants' favor on all other issues. *See id.* at 29-31, 36-50.

The Court directed the parties to submit proposals for remedy briefing. But after Simplot indicated that it intended to seek section 1292(b) certification of the March 31 order, the Court directed briefing on that issue first; after that issue is decided, the Court will turn to remedial questions. Pursuant to the Court's order, Simplot filed its certification motion on May 19. The motion argues that the 1900 Act and valuation rulings warrant interlocutory review. Simplot Mem. 5-19.

The United States initially represented to both Simplot and Plaintiffs that we took no position on that motion. After further consideration, the United States does not believe the criteria for interlocutory appeal are met and submits this memorandum in opposition.

## III.     ARGUMENT

Section 1292(b) provides that, when a district court enters a non-appealable order in a civil case, and the judge "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). Thus, there are three general certification requirements: (1) a controlling question of law; (2) as to which there is substantial grounds for difference of opinion; and (3) the immediate resolution of which may materially advance the ultimate termination of the litigation.

The United States agrees with Simplot that the first two requirements are met here, as the 1900 Act and valuation issues are controlling questions of law and reasonable jurists could disagree with this Court's resolution of those questions.

However, we submit that the third requirement is not met in the circumstances of this case. Interlocutory appeal at this stage, and in this context, would not "materially advance the ultimate termination of the litigation" within the meaning of section 1292(b). Here, interlocutory appeal would not substantially shorten the litigation and, indeed, might lengthen it. For one thing, there is not "protracted and expensive litigation" remaining in this Court. *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966); *accord Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). There is no discovery, trial, or even merits briefing to be avoided or streamlined by narrowing the issues or parties. And although we do not address remedy at this time, it does not appear that it would be overly complicated to *litigate* what remedies are and are not appropriate.

In addition, as summarized above, the two grounds on which Simplot seeks interlocutory appeal are not the only grounds upon which the Court ruled against Defendants. To be sure, if this

Court certifies its Order, Defendants could challenge any aspect of that Order, not just the two issues Simplot identified. *See Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) ("[Section] 1292(b) does not permit 'limited purpose' certification. Rather, when an order is certified for appellate review, appellate jurisdiction applies to the order certified and is not tied to the particular question formulated by the district court."). And the United States reserves the right to challenge any of this Court's holdings if an interlocutory appeal goes forward. But the court of appeals may also decide that these other issues—which are more fact-bound—are not appropriate for interlocutory appeal. And of course, this Court ruled against the Tribe on several other issues, as to which the Tribes may attempt to seek further review after final judgment.

Under these circumstances, interlocutory appeal might well delay ultimate resolution of this litigation. *See, e.g.*, *Shurance v. Plan. Control Int'l Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (refusing to hear an interlocutory appeal where it "might well have the effect of delaying the resolution of this litigation"). This Court would presumably stay further proceedings pending an interlocutory appeal (otherwise, there would be no practical purpose in this context to certifying the Order). Briefing and resolution of any interlocutory appeal would likely take approximately a year, and the losing parties would have the right to seek further review from the Ninth Circuit or the Supreme Court. While it is possible that the Ninth Circuit would reverse this Court across the board, it might reach only some of the issues. If the Ninth Circuit either affirms or reverses in part, then the case would return to this Court to assess remedy and further potential appeals by Defendants or Plaintiffs upon issuance of an appealable judgment. It would be more efficient under the circumstances to resolve all the issues in one appeal following a final judgment.[1]

---

[1] To be sure, if the Ninth Circuit were to *affirm* this Court's 1900 Act ruling on interlocutory appeal, it is possible that there would be no second appeal. But even in that scenario—and even

Anticipating this likely objection, Simplot's motion argues that the 1900 Act and valuation issues raise remedial issues different than the remaining NEPA and FLPMA issues. Simplot is concerned about the potential intrusiveness and complications of an Order requiring the parties to unwind the Exchange, which would be complicated further still if the Ninth Circuit subsequently reverses this Court on an appeal following a final judgment. Simplot Mem. 1, 20.

Although we do not address remedies at this stage, we acknowledge that Simplot's practical concerns regarding unwinding the land exchange should be taken seriously. But those concerns can be considered without an interlocutory appeal. Most obviously, if this Court's final judgment includes vacatur of the ROD for the Exchange or similar relief, that judgment could be stayed pending resolution of any appeal. The Court could issue such a stay *sua sponte* or in response to a motion from one of the parties. Or the Court could structure any judgment such that its effective date is only after any appeals as of right have been resolved. Indeed, Simplot itself appears to implicitly acknowledge that such steps would address its concerns. *See* Simplot Mem. 1 ("If such an injunction were issued *(and not stayed)*, Simplot and Federal Defendants would then have to implement it—unwinding the exchange (and possibly even steps taken since)." (emphasis added)).

As noted above, the issue of remedy remains to be addressed by the parties pursuant to the Court's scheduling order. The Solicitor General, moreover, is responsible for determining whether and to what extent the United States will pursue an appeal in a case in which the federal

---

assuming there would be no litigation over other topics, such as whether this Court's rulings on the remaining issues should be vacated as moot—from a procedural standpoint there would have been no real gains achieved from interlocutory appeal: this Court would then presumably conduct the same remedial proceedings (in a posture where its 1900 Act ruling remains) as it would without interlocutory appeal. Under any scenario, it is thus not apparent that interlocutory appeal would *advance* the ultimate termination of the litigation.

government receives an adverse judgment in state or federal court. 28 C.F.R. § 0.20(b). The United States thus has not determined whether and under what circumstances it might appeal or seek a stay pending appeal from an adverse final judgment in this case or whether it would apply to the Ninth Circuit for permission to appeal if this Court were to issue an order pursuant to 28 U.S.C. § 1292(b). Our position is simply that Simplot's concerns are more appropriately addressed in the context of an appeal from a final judgment rather than through an interlocutory appeal that is unlikely to materially advance the ultimate termination of this litigation.

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should deny the motion to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully submitted this 9th day of June, 2023,

TODD KIM
Assistant Attorney General

_s/ Devon Lehman McCune_
DEVON LEHMAN McCUNE
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
(303) 844-1487 (tel.)
Devon.McCune@usdoj.gov

SHANNON BOYLAN
D.C. Bar No. 1724269
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M St. NE., Suite 3.1406
Washington, DC 20002
Tel: (202) 598-9584
shannon.boylan@usdoj.gov