Steven B. Andersen, ISB # 2618
**KIRTON MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, Idaho 83702
Telephone: (208) 370-3325
E-mail: sandersen@kmclaw.com

Thomas C. Perry, ISB #7203
**J.R. SIMPLOT COMPANY**
1099 W. Front Street
Boise, Idaho 83707
Telephone: (208) 780-7430
E-mail: thomas.perry@simplot.com

Stephen J. Odell, OSB # 903530 (admitted *Pro Hac Vice*)
**MARTEN LAW, LLP**
1050 SW Sixth Ave., Ste. 2150
Portland, Oregon 97204
Telephone: (503) 241-2648
E-mail: sodell@martenlaw.com

*Attorneys for Defendant-Intervenor J.R. Simplot Company*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION,<br><br>        Plaintiff,<br><br>LAURA DANIEL-DAVIS, Principal Deputy Assistant Secretary for Land and Minerals Management; UNITED STATES DEPARTMENT OF THE INTERIOR; and UNITED STATES BUREAU OF OF LAND MANAGEMENT,<br><br>        Defendants,<br><br>and<br><br>J.R. SIMPLOT COMPANY,<br><br>        Defendant-Intervenor. | Case No. 4:20-cv-00553-BLW<br><br>**DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL** |

# INTRODUCTION

Withholding § 1292(b) certification would thrust this Court and the parties into complex and likely protracted remedy proceedings, which undisputedly may prove unnecessary (and counterproductive) if the Ninth Circuit later reverses. Neither the Tribes nor Federal Defendants identify any good reason for the Court to take that potentially wasteful and inadvisable course.

It is common ground among all parties that the Court's summary-judgment ruling, ECF No. 89 (SJ Order), involves at least one controlling question of law. The Tribes concede the 1900 Act issue qualifies, and the Federal Defendants "agree[] with Simplot" (ECF No. 95, at 6) both about that issue and the appraisal-standards question. Federal Defendants also agree that "reasonable jurists could disagree with this Court's resolution of those questions." *Id.*

The only real remaining dispute therefore is whether interlocutory review "may materially advance" resolution of the case. 28 U.S.C. § 1292(b). The Tribes and Federal Defendants do not deny that a Ninth Circuit decision now could moot or significantly limit any proceedings on remedies. They nevertheless discount that substantial benefit primarily because they either fail or refuse to recognize what remedy proceedings would necessarily entail. As the Court has already acknowledged, the ultimate relief the Tribes seek—unwinding a land exchange in the works for more than two decades and completed over two and a half years ago—would require not only vacating the agency actions, but also issuing a mandatory, affirmative *injunction*. SJ Order 17. The Tribes' blithe assumption that vacatur would automatically result in unwinding the exchange runs headlong into Supreme Court precedent. This Court cannot enter an injunction unless the Tribes prove, and the Court were to find, that all the traditional injunction factors are met and that no other equitable considerations (such as laches) bar relief.

Federal Defendants' tepid prediction that resolving the remedy issues would not "appear" "overly complicated" (ECF No. 95, at 6) is neither reassuring nor well-grounded. This follows because the Court would have to determine whether the Tribes could carry their burden to secure an injunction compelling affirmative steps to unwind a whole series of actions that have occurred since BLM's approval of the exchange. In doing so, the Court must weigh such issues as the Tribes' lack of irreparable harm; the potential delay of environmental benefits facilitated by the exchange; other public impacts, including harms to ongoing uses of expanded public lands, Simplot's continued operation of the Don Plant, its labor force, the local community, the State, and national interests in domestic fertilizer production; the unfairness of upsetting Simplot's substantial reliance interests; the Tribes' unexplained, inexcusable delay in contending that the exchange violates the 1900 Act; state property law; and the adequacy of legal remedies. Those and other fact-intensive inquiries would require consideration of extensive additional evidence.

Federal Defendants "acknowledge" these "practical concerns," plus the extraordinary disruption of then having to undo such a drastic remedy if the Ninth Circuit reverses; to solve them, they suggest any injunction could be stayed. ECF No. 95, at 8. This gives the game away by making clear *their* proposal would require complicated injunction proceedings that could culminate in yet *additional* process (and still further factual development) involving any such stay motion. A § 1292(b) appeal is by far the simpler and more efficient solution.

Section 1292(b) is tailor-made for situations like this. And neither the Tribes nor Federal Defendants identify any cognizable downside to giving the Ninth Circuit the option to weigh in now. The Court should certify its order for appeal and defer any proceedings on remedies.

# ARGUMENT

I.  **The 1900 Act and appraisal issues are controlling questions of law on which reasonable minds can disagree.**

Federal Defendants "agree[] with Simplot that the first two requirements [of § 1292(b)] are met here, as the 1900 Act and valuation issues are controlling questions of law and reasonable jurists could disagree with this Court's resolution of those questions." ECF No. 95, at 6. Only the Tribes dispute those two elements, and their objections are insubstantial.

***Section 5 of the 1900 Act.*** The Tribes do not dispute that the 1900 Act issue is a "controlling question of law." ECF No. 96, at 5. They contend that no substantial ground for disagreement exists, *id.* at 5-7, but they offer nothing to undermine Simplot's contrary showing.

The Tribes never deny that the 1900 Act issue is novel. And they concede that "[c]ourts traditionally will find that a substantial ground for difference of opinion exists . . . if novel and difficult questions of first impression are presented." ECF No. 96, at 9 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). The Tribes protest that a lack of precedent alone is not enough. *Id.* But the 1900 Act issue's novelty at a minimum strongly supports a finding that room for reasonable debate exists—as this Court and others have recognized in cases that Simplot cited (ECF No. 94-1, at 6-7), but that the Tribes all but ignore.[1]

What is more, as Simplot has shown, reasonable jurists could read Section 5 of the 1900 Act differently because other pre-FLPMA acts of Congress, canons of construction, and case law support other readings of section 5 or show that Congress had already superseded any exclusivity

---

[1] The Tribes attempt to distinguish just one of the cases Simplot cited on this point—*McKinney v. Fisher*, No. 96-CV-177, 2006 WL 1275130 (D. Idaho May 9, 2006) (Winmill, C.J.)—by quoting this Court's summary of the movant's argument that the law was "unsettled." ECF No. 96, at 9 n.5 (citation omitted). But this Court endorsed that description *because* it "agree[d] with [the movant] that case law" on that issue "[wa]s sparse." *McKinney*, 2006 WL 1275130, at *2.

DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL - 3

limitation it contained prior to FLPMA. ECF No. 94-1, at 7-14. The Tribes address none of the alternative readings of § 5 Simplot set forth, nor any of the post-1900, pre-FLPMA enactments Simplot cited. They merely reprise the claims that omission of the 1900 Act from FLPMA's list of repealed statutes and the presumption against implied repeals compel reading § 5 to thwart FLPMA's independent land exchange authority and override its animating purpose to treat all public lands the same, however acquired. ECF No. 96, at 7, 13. But they never respond to Simplot's showing that, especially in light of intervening statutory history, Congress clearly deemed expressly repealing § 5 unnecessary in enacting FLPMA. *Cf.* ECF No. 94-1, at 11-12.

The Tribes urge the Court to ignore all those arguments, mischaracterizing Simplot's motion as "attempt[ing] to reargue the merits" in a bid for "reconsideration." ECF No. 96, at 8, 13-14. Simplot does *not* ask the Court to reconsider its ruling; it simply requests permission to seek review of that determination in the Ninth Circuit now. In making that procedural request, Simplot's motion merely shows (as § 1292(b) requires) why reasonable minds could disagree.[2]

The reasons proffered for the Tribes' position that reasonable minds could not read § 5 differently repeat points Simplot has already refuted. They note the Court found § 5's language to be "'clear.'" ECF No. 96, at 6. But they have no persuasive answer to cases illustrating that neither a court's conviction that its view is correct, nor its belief that a statute's meaning is plain, precludes *other* jurists from reasonably reaching a different conclusion on such points.[3] For

---

[2] The Tribes' assertion that Simplot's motion "makes new arguments" (ECF No. 96, at 13-14) is irrelevant in any event: On appeal Simplot may make any argument related to claims resolved in this Court. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (citation omitted); *accord, e.g.*, *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004).
[3] ECF No. 94-1, at 15-16 & n.3 (collecting cases); *see also, e.g.*, *McKinney*, 2006 WL 1275130, at *2 (holding that "reasonable jurists could debate" an issue even though "th[is] Court [wa]s convinced that [its] decision [wa]s correct"); *Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc.*, No. 12-CV-96, 2012 WL 12871660, at *2 (D. Alaska, Sept. 13, 2012) (similar).

example, the Tribes brush aside rulings certifying appeals despite finding a statute was clear based on bare conjecture that such rulings were not "thoroughly considered." ECF No. 96, at 6.[4]

The Tribes also argue that this Court's reliance on "Indian canons" bars reasonable debate. ECF No. 96, at 6. But they ignore the Court's recognition that the canon might "not apply" if the statute is ambiguous (in light of agency deference). SJ Order 15 n.3. Nor do they address other reasons why the canon might not apply—*e.g.*, the Court's reading of § 5 and analogous provisions might not uniformly benefit tribes[5]—or might otherwise be overcome.

***FLPMA appraisal standards.*** The Tribes deny that the appraisal-standards issue meets § 1292(b)'s first two elements. ECF No. 96, at 4-5, 7-8. That is academic because the Court need only find one eligible question to certify.[6] Regardless, their objections are unpersuasive.

The Tribes mistakenly assert that the FLPMA appraisal-standards issue is a mixed question of law and fact ineligible for certification. ECF No. 96, at 4. The controlling legal issue Simplot

---

[4] The Tribes correctly note (ECF No. 96, at 8 n.4) that a parenthetical in a footnote in Simplot's opening brief mistakenly described *North v. Superior Hauling & Fast Transit, Inc.*, No. 18-CV-2564, 2019 WL 6794211 (C.D. Cal. July 10, 2019), as having granted certification. That case in fact denied certification on other grounds. *See id.* at *3. Simplot regrets that oversight, but it has no effect on Simplot's argument, because *North* directly supports the point for which Simplot cited it: The court explained that, even though it "believe[d] that its prior Order reached the correct outcome on th[e] question," it was "persuaded that there are at least some grounds for a difference of opinion" sufficient to satisfy § 1292(b)'s substantial-ground element. *Id.* at *2. The Tribes also do not respond to any of the other cases Simplot cited for that point.

[5] *Cf.* ECF No. 94-1, at 16. For example, Congress recently amended the Recreation and Public Purposes Act to make tribes eligible to purchase public land for recreational purposes. 2023 Consolidated Appropriations Act, Pub. L. No. 117-328, Div. DD, Tit. I, § 104(a), 136 Stat. 5580 (Dec. 23, 2022) (amending 43 U.S.C. § 869(a)). That Act applies to "any public lands," 43 U.S.C. §869(a), but the amendment does not address prior cession acts. *Id.*; *cf.* FLPMA § 206(a), 43 U.S.C. § 1716(a) (applicable to "[a] tract of public land or interest therein"). In that context, the Court's reading of § 5 could work to tribes' *detriment* by precluding them from acquiring such lands under the amendment, which likewise did not expressly repeal the 1900 Act.

[6] *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 204-05 (1996); *Couch*, 611 F.3d at 634; *McKinney*, 2006 WL 1275130, at *2 n.3.

DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL - 5

identified is the governing *standard* for appraisal under the statute, regulations, and Uniform Appraisal Standards. ECF No. 94-1, at 17-19. This is a quintessential question of law. In any event, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law."[7]

The Tribes also err in contending that reasonable debate on that issue is impossible because "th[is] Court applied Ninth Circuit precedent." ECF No. 96, at 7. To the contrary, reasonable jurists can certainly disagree over the correct application of judicial decisions no less than when applying statutes and rules. Moreover, the Court itself recognized this case is "distinguishable from" the two Ninth Circuit "landfill cases" on which it relied, because neither addressed an exchange for a use "only valuable to" the acquiring private party. SJ Order 27. Whether to *go beyond* those decisions' reasoning despite that distinction is a question of law.

## II. Interlocutory review will materially advance the ultimate resolution of this litigation.

The only remaining dispute—and Federal Defendants' only ground for opposing certification, ECF No. 95, at 6-9—is whether an appeal now "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). That criterion is readily met here. Given the obvious complexity of a protracted remedies phase, Simplot can certainly show "the *possibility* that interlocutory review would materially advance the litigation."[8]

Neither the Tribes nor Federal Defendants deny that a Ninth Circuit decision reversing some or all of this Court's rulings on the merits could avoid or at least significantly narrow any

---

[7] *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citation omitted) (collecting cases); *see Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985).
[8] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, No. 15-CV-1082, 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016); *see, e.g.*, *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 416 (M.D. La. 2020) ("§ 1292(b) does not require the appeal to *certainly* advance the termination of the litigation" but only that "such appeal *may*" do so (first emphasis added)).

further proceedings on remedies. That should be the ballgame. "Appeals are frequently certified from orders—particularly those granting summary judgment—that establish some or all issues of liability, leaving other matters open for further proceedings."[9]

The Tribes and Federal Defendants discount the value of eliminating or streamlining remedy proceedings by grossly downplaying the extent, difficulty, and expense of trying the remedy issues. The relief the Tribes apparently wish to seek is to unwind a land exchange completed years ago. *See* ECF No. 74, at 48 (asking Court for "titles" to exchanged lands to be "transferred back"); ECF No. 37-1, at 50. As this Court recognized, that relief would require not only vacating the challenged agency actions, but *also* "issuing an injunction" directing Simplot and the Federal Defendants to take affirmative steps to undo the exchange along with any other subsequent actions. SJ Order 17. The Tribes have never pleaded, let alone proved, the elements required to obtain an affirmative injunction—a failure the Court would have to address in any remedial proceedings. But the Tribes never address the analysis an injunction would require.

To the extent the Tribes assume that vacatur alone will automatically lead to undoing the exchange that the agency action they challenge approved, *see, e.g.*, ECF No. 96, at 11 n.7, 12 n.8, 13, the Supreme Court rejected that assumption in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). *Monsanto* holds that vacatur and injunctive relief are distinct remedies and that a plaintiff seeking the latter must prove the traditional requirements for it are satisfied. *Id.* at 156-57, 165-66. The Court explained that "[a]n injunction is a drastic and extraordinary remedy" that "should not be granted as a matter of course," but should "issue only if the traditional four-factor test is satisfied." *Id.* at 157, 165. It further repudiated any "presum[ption] that an injunction is the

---

[9] 16 *Federal Practice & Procedure: Juris.* § 3931 & n.64 (collecting cases); *see, e.g.*, *United Mine Workers v. Pittston Co.,* 984 F.2d 469, 471 (D.C. Cir. 1993) (interlocutory appeal granted after grant of summary judgment); *Hogan v. Heckler*, 769 F.2d 886, 891 (1st Cir. 1985) (same).

DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL - 7

proper remedy for a NEPA violation.'" *Id.* at 157. And *Monsanto* left no room for lip service, explaining that a "perfunctory recognition that 'an injunction does not automatically issue'" will not do and a court must instead affirmatively "determine that an injunction *should* issue under the traditional four-factor test." *Id.* at 157-58. Other courts routinely heed *Monsanto*'s clear teaching, and the federal government well understands it, too.[10]

Adjudicating the Tribes' prospective motion for an injunction would inevitably entail complex proceedings far more demanding than in a typical agency case where the principal remedial issue usually is whether to remand with or without vacatur. The Tribes must instead carry their burden of proving all four traditional injunctive factors: irreparable injury, no adequate legal remedy, balance of hardships in their favor, and public interest supporting relief. *Monsanto*, 561 U.S. at 156-57. Resolving those fraught, deeply factbound issues would require extensive effort by the parties and the Court. The Tribes must also seek a "mandatory injunction" (*i.e.*, requiring a party to affirmatively take, not refrain from, action), which is "'particularly disfavored'" and "'not granted unless extreme or very serious damage will result.'" *Anderson v. United States*, 612 F.2d 1112, 1114-15 (9th Cir. 1980). But they have never tendered any evidence that the transfer of public land to a private party (which § 5 and FLPMA each expressly authorize) irreparably harmed them merely because of the land-disposal *methods* used. The Tribes must

---

[10] In the Dakota Access Pipeline litigation, for example, the D.C. Circuit affirmed an order vacating the agency's NEPA analysis, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1042-53 (D.C. Cir. 2021), but reversed the district court's order directing the pipeline to cease operating on land conveyed by the government by easement in reliance on the same NEPA analysis because (as the government argued) the district court had not conducted the *Monsanto* analysis required for such injunctive relief, *id.* at 1053-54; Gov't Br. 34-35, *Standing Rock, supra*. On remand, the district court ruled that the plaintiffs "ha[d] not cleared th[e] daunting hurdle" of *Monsanto* (in particular, irreparable harm) and denied relief. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 540 F. Supp. 3d 45, 50, 55-65 (D.D.C. 2021).

further show that no remedy at law—such as a breach-of-trust action for damages against the government in the Court of Federal Claims is adequate to redress any injuries. They must prove their alleged injuries outweigh harms to Simplot—*e.g.*, the unfairness of upsetting its extensive reliance interests reflected in its investments in infrastructure and marked environmental improvements throughout the nearly three decades it has actively pursued the exchange. And they must show that delaying Simplot's project indefinitely and putting the future of its plant further at risk over the long term would not disserve other critically important interests of other stakeholders and the public, including Simplot's workers, the local community, as well as the regional and "national economy." 12/15/22 Hr'g Tr. 96:24.

The parties and the Court would also have to address whether any other consideration precludes an injunction—such as the Tribes' lengthy delay in seeking to block the exchange based on § 5. The Tribes waited three decades after Simplot's efforts to pursue the exchange and its expansion project began, and long after their prior suit concluded, before asserting that § 5 bars it altogether. And in the present suit, the Tribes chose not to seek or prove their entitlement to a preliminary injunction to preserve the pre-exchange status quo, clearing the path for the exchange to proceed even while the litigation progressed.[11]

Federal Defendants' conjecture (at 6) that resolving those factbound issues may not be "overly complicated" exhibits unrealistic optimism, and it underscores that Simplot is now the real party in interest, ECF No. 6-1, at 1-2. Those issues would likely require the parties to present and

---

[11] The Tribes cite (at 15 n.11) their complaint's passing request for injunctive relief, which is irrelevant. The point is not that the Tribes cannot ever move for an injunction (to which their complaint might be relevant); it is rather that they bypassed the obvious avenue referenced in their Complaint of "prohibiting Defendants . . . from proceeding with the Land Exchange," Complaint at p. 41 (ECF No. 1), or indeed, ever sought any injunctive relief since its execution two and a half years ago, and have thus greatly complicated any remedial proceedings.

DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL - 9

the Court to consider extensive additional evidence and argument. The "appropriate remedy" is "a question of equity," and "equity is best served by having all possible information at [the Court's] disposal."[12] All those efforts will be wasted if the Ninth Circuit reverses.

That is only the beginning of the deadweight loss that forgoing a § 1292(b) appeal could produce. If this Court addresses remedies, issues an injunction without a stay, and is later reversed, all efforts to implement that injunction would not only be wasted, but must be *undone*. Pressing forward to address remedies now thus could be profoundly counterproductive.

Federal Defendants "acknowledge" those "practical concerns"—the touchstone of equity—but suggest that the Court can address them by issuing a stay, or (which is evidently the same thing) by "structur[ing]" its judgment to become "effective" only "after any appeals" are completed. ECF No. 95, at 8. Stay proceedings (in this Court, the Ninth Circuit, or both), however, would add *another* layer of pre-appeal process. The government thus would replicate what a § 1292(b) appeal would provide—appellate review with no operative injunction in force—by adding not one but two (or three) rounds of additional and potentially unnecessary proceedings. That roundabout, Rube Goldberg approach has nothing to recommend it.[13]

The remaining objections to immediate review are makeweights. Federal Defendants note (at 6-7) that the Ninth Circuit might not review every issue this Court addressed. But they admit (*id.* at 7) that the Circuit could decide all of the issues, and even a decision resolving one or more questions could materially advance the case's termination. The Tribes note (at 10-11 & n.7) the

---

[12] *Ctr. for Biological Diversity v. BLM*, No. 21-CV-182, 2023 WL 3796675, at *2 (D. Idaho June 2, 2023) (Winmill, J.).

[13] The Tribes discuss whether a stay *of proceedings* is warranted if certification is granted. ECF No. 96, at 14-17. As Federal Defendants note (at 7), such a stay would be appropriate. But to avoid any doubt, a stay of proceedings would be unnecessary for Simplot to proceed with its intended uses, including securing permits to effectuate the purposes of the exchange.

DEFENDANT-INTERVENOR J.R. SIMPLOT COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY SUMMARY JUDGMENT MEMORANDUM DECISION & ORDER FOR INTERLOCUTORY APPEAL - 10

Ninth Circuit might affirm, but that is always true; if that sufficed to defeat certification, § 1292(b) would be a dead letter. Federal Defendants speculate that an appeal might not accelerate (and might delay) final judgment. Simplot disagrees, but that calendar-day possibility is likewise inherently part of § 1292(b) and insufficient to defeat this motion.[14]

In sum, the question is simply whether to enable the Ninth Circuit to give definitive direction before a potentially wasteful, harmful remedy phase. The answer is clearly affirmative.

## CONCLUSION

For these reasons, the Court should grant Simplot's motion to certify the Court's summary-judgment order (ECF No. 89) for interlocutory appeal under 28 U.S.C. § 1292(b).

DATED this 23rd day of June 2023.

                                                   */s/ Steven B. Andersen*
                                                   Steven B. Andersen
                                                   KIRTON MCCONKIE
                                                   Stephen J. Odell
                                                   MARTEN LAW, LLP
                                                   Thomas C. Perry, Senior Counsel
                                                   J.R. SIMPLOT COMPANY

                                                   Attorneys for Defendant-Intervenor J.R. Simplot Company

---

[14] *See, e.g.*, *Aluminium Bahrain B.S.C. v. Dahdaleh*, No. 08-CV-299, 2012 WL 5305169, at *3 (W.D. Pa. Oct. 25, 2012); *D'Antuono v. Serv. Rd. Corp.*, No. 11-CV-33, 2011 WL 2222313, at *2 (D. Conn. June 7, 2011).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of June 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Paul C. Echo Hawk | paul@echohawklaw.com |
| William F. Bacon | bbacon@sbtribes.com |
| Devon Lehman McCune | devon.mccune@usdoj.gov |

                                              */s/ Steven B. Andersen*
                                              Steven B. Andersen